**TEXAS GAS CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 13751.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 1, 1957.

Decided Nov. 7, 1957.

Mr. A. A. White, Houston, Tex., of the bar of the Supreme Court of Texas, pro hac vice, by special leave of Court, and Mr. John T. Miller, Jr., Washington, D. C., for petitioner.

Mr. C. Louis Knight, Attorney, Federal Power Commission, with whom Messrs. Willard W. Gatchell, General Counsel, Federal Power Commission, and Howard E. Wahrenbrock, Solicitor, Federal Power Commission, were on the brief, for respondent.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

By the terms of a contract between them dated April 30, 1953, Texas Gas Corporation agreed to sell and deliver to Texas Eastern Transmission Corporation specified quantities of natural gas over a long term of years. It was agreed therein that, subject to certain conditions not material here, the gas should be paid for at the following rates: 12.5¢ per Mcf from the date of initial delivery to November 1, 1953; 12.7¢ from November 1, 1953, to November 1, 1954; and during each annual period thereafter until November 1, 1967, a price per Mcf 2 mills larger than that which prevailed in the previous period; 15.5¢ beginning Novem-

ber 1, 1967, and thereafter during the remainder of the term.

When this contract was executed, gas sales such as it covered were not regarded by the Federal Power Commission as subject to its regulatory jurisdiction. Somewhat more than a year later, however, the Supreme Court held that a producer or gatherer of natural gas who sells it in interstate commerce for resale is a "natural-gas company" within the meaning of the Natural Gas Act, 15 U.S. C.A. § 717 et seq., and that his sales of that character are subject to regulation by the Federal Power Commission.[1] Pursuant to this holding, the Commission on August 7, 1954, issued an order requiring such independent producers to file their rate schedules which were in effect on the day of the Supreme Court's decision.[2] The order also provided that such rates should not be changed except in accordance with § 4(d) of the Natural Gas Act and § 154.94 of the order; and declared that the operation of a rate schedule such as that of Texas Gas, providing for "future or periodic changes in the rate * * * shall constitute a change in rate schedule."

As required by the order, Texas Gas filed with the Commission its contract with Texas Eastern. Also as required by the order, but under protest, it seasonably notified the Commission that its contract with Texas Eastern fixed a price of 12.9¢ per Mcf for the year beginning November 1, 1954. In like manner it later gave notice that the contract price was 13.1¢ per Mcf for the year beginning November 1, 1955. Neither notice provoked any adverse administrative action.

But, when Texas Gas notified the Commission, again under protest, that its contract with Texas Eastern fixed a price of 13.3¢ per Mcf for the year beginning November 1, 1956, (which was of course 2 mills per Mcf higher than that provided for the previous twelvemonth) the commission acted affirmatively. It treated the contractual provision as a change in the rate schedule of Texas Gas and, purportedly under authority of §§ 4 and 15 of the Natural Gas Act, ordered that a public hearing be held "concerning the lawfulness of said proposed change in rates and charges." It also suspended the operation of the contractual rate "until April 24, 1957 and until such further time as it is made effective in the manner prescribed by the Natural Gas Act." When its application for reconsideration of the order was denied, Texas Gas petitioned us for review of the Commission's action.

The petitioner urges that its contract with Texas Eastern was filed with and received by the Commission as its rate schedule; that it is a single and indivisible agreement, and that, since the annual price increases were provided for therein, they are part of the originally-filed rate schedule and do not constitute changes in its rate schedule of which notice must be given to the Commission under § 4(d) or which may be investigated or suspended by the Commission under the procedure set forth in § 4(e).

The petitioner insists that the prices fixed in its contract with Texas Eastern, including not only that for the initial period but also those for each subsequent period, are subject to change by the Commission only in a proceeding under § 5 (a) of the Act, the purpose of which is to ascertain whether established rates are unjust, unduly discriminatory, preferential, otherwise unlawful, or are not the lowest reasonable rates. If the Commission so finds it may order a decrease in the existing rates, but it may not suspend them pending hearing and decision in the manner it is authorized by § 4(e) to suspend a new schedule of rates filed as required by § 4(c). It is therefore argued that the suspension order, issued ostensibly under the authority of § 4(e), has in effect changed its contract with Texas Eastern; that the Commission has unlawfully done under § 4(e) what can lawfully be done only under § 5(a).

1. Phillips Petroleum Co. v. State of Wisconsin, June 7, 1954, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035.

2. Federal Power Commission Order No. 174–A, §§ 154.92 and 154.94(a), (b), (c).

United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332, 76 S. Ct. 373, 100 L.Ed. 373, is cited in support.

Further and specific aggrievement is suggested: had the contractual price for the year beginning November 1, 1956, not been suspended, Texas Gas says its revenue from Texas Eastern during the suspension period would have exceeded by $7,852 the amount it was allowed to collect. Because of this deprivation, the petitioner says the order unlawfully inflicts upon it a substantial and irreparable injury,

"* * * in that it denies to petitioner sums of money to which it legally and equitably is entitled under its contract with Texas Eastern, and has deprived petitioner of property without fair and impartial consideration and without due process of law."

It is necessary at the outset to ascertain whether, in the present posture of the proceeding, we have jurisdiction to consider and decide the questions posed by the petitioner. Texas Gas asserts that

"The order of the Commission entered November 23, 1956, finally determines the legal rights of petitioner with respect to the matters within the scope of review, and is reviewable by the Court of Appeals pursuant to Section 19(b) of the Natural Gas Act, 15 U.S.C.A., Section 717r(b)."

Section 19(b) permits us to review an order of the Commission at the petition of a party to the proceeding who is aggrieved thereby. The section is a copy of § 313(b) of the Federal Power Act, 16

U.S.C.A. § 825*l*(b), concerning which Mr. Chief Justice Hughes wrote as follows in Federal Power Comm. v. Metropolitan Edison Co., 1938, 304 U.S. 375, 384, 58 S.Ct. 963, 967, 82 L.Ed. 1408:

"The context in section 313(b) indicates the nature of the orders which are subject to review. Upon service of the petition for review, the Commission is to certify and file with the appellate court 'a transcript of the record upon which the order complained of was entered.' The statute contemplates a case in which the Commission has taken evidence and made findings. Its findings, if supported by evidence, are to be conclusive. The appellate court may order additional evidence to be taken by the Commission and the Commission may thereupon make modified or new findings. The provision for review thus relates to orders of a definitive character dealing with the merits of a proceeding before the Commission and resulting from a hearing upon evidence and supported by findings appropriate to the case."

Measured by this holding, the order complained of here lacks finality. It is also apparent that Texas Gas is not presently aggrieved thereby. The Commission has not yet rejected the contractual rate for the year beginning November 1, 1956. It has merely announced its intention to embark on a hearing concerning the lawfulness of the rate, at which Texas Gas may make all the arguments it advances here. It may prevail before the Commission, in which event it probably could collect from Texas Eastern the additional sum of $7,852 on account of gas delivered during the suspension period.[3]

---

**3.** Cf. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332, 346, 76 S.Ct. 373, 100 L.Ed. 373; Baltimore & O. R. Co. v. United States, 1929, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954. Although the suspension period in this case apparently ended April 24, 1957, we were told at oral argument October 1, 1957, that the hearing ordered by the Commission had not been held. The Commission should, and doubtless will, promptly hear and decide this matter so that any claim which might be asserted by Texas Gas against Texas Eastern, should the former finally prevail on the merits, will not be jeopardized by the possibility that the applicable statute of limitations might be successfully invoked. As to whether the statute is tolled by the pendency of the proceeding, we express no opinion. The Commission might well have required the suspended portion of the rate to be paid and impounded pending ultimate disposition.

If it does not prevail before the Commission, Texas Gas may then petition for review and raise the questions which we think are now prematurely presented. Since we lack jurisdiction, the petition for review will be

Dismissed.