**PAPAGO TRIBAL UTILITY AUTHORITY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Arizona Public Service Company and Arizona Power Authority et al., Intervenors.**

**No. 79–1562.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 19, 1980.

Decided June 23, 1980.

ant to 28 U.S.C. § 292(a) (1976).

Richard I. Chaifetz, Washington, D. C., with whom Arnold D. Berkeley and Bruce J. Wendel, Washington, D. C., were on the brief, for petitioner.

Rhodell G. Fields, Atty., Federal Energy Regulatory Commission, Washington, D. C., with whom Howard E. Shapiro, Sol., Federal Energy Regulatory Commission, Washington, D. C., was on brief, for respondent.

Brian J. McManus, Washington, D. C., with whom Richard M. Merriman, Washington, D. C., was on brief, for intervenor Arizona Public Service Co.

Melvin Richter, Washington, D. C., for intervenor Arizona Power Authority et al.

Before WRIGHT, Chief Judge, MacKIN-NON, Circuit Judge, and PENN,* District Judge.

Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Chief Judge:

This petition raises an important question concerning the authority of this court to review certain nonfinal administrative orders. At issue is a decision of the Federal Energy Regulatory Commission (FERC or Commission) to accept a rate filing by an electric power wholesaler under Section 205(d) of the Federal Power Act (the Act), 16 U.S.C. § 824d(d) (1976).[1]  On December

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. Section 205(d) of the Act, 16 U.S.C. § 824d(d) (1976), provides in relevant part:

29, 1978 intervenor Arizona Public Service Company filed a new schedule of wholesale electric rates with the Commission, estimated to increase its annual revenues by $10,243,213. Petitioner Papago Tribal Utility Authority, a customer of intervenor, filed papers opposing the rate increase.[2] It claimed that the rate filing was unlawful on its face and should be rejected. Petitioner's main arguments before the Commission were that intervenor improperly calculated its federal corporate income tax obligation according to the pre-1979 rate of 48 percent rather than the current rate of 46 percent; that intervenor's three-year period for calculating peak demand charges should be reduced to one year; that intervenor's regulatory expenses should be amortized over a two-year period instead of the proposed one-year period; that intervenor should bear the expense of certain low-cost sales to the Navajo Tribal Utility Authority; that intervenor's proposed return on equity was excessive; and that intervenor overstated petitioner's unit demand charge.[3]

Intervenor responded to petitioner's motion by acknowledging that the federal corporate income tax rate employed in the filing was misstated, and that the billing demand estimated for petitioner was excessive, because of certain changes in petitioner's operations. It agreed to adjust its proposed rates to correct these errors. But it argued that the other issues raised by petitioner should be resolved after a hearing before the Commission.[4] By order of February 28, 1979 the Commission accepted the proposed schedule for filing, suspended the new rates for the maximum five-month period, granted petitioner's motion for summary disposition with respect to the corporate income tax rate issue, and denied the remainder of petitioner's motion for summary disposition.[5]

Petitioner moved for rehearing on the ground that intervenor's rate filing contained patent defects requiring its rejection.[6] FERC denied this motion on April 30, 1979.[7] The Commission acknowledged that it has the authority to reject filings which are " 'patently . . . deficient in form or a substantive nullity'." Joint Appendix (JA) 70 (*citing Municipal Light Boards v. FPC*, 450 F.2d 1341 (D.C.Cir. 1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972)). However, it found that intervenor's filing was "in substantial compliance" with the filing rules, and that petitioner's arguments raised factual issues not ripe for summary disposition. *See* JA 70. Thus the Commission denied petitioner's motion for rehearing and set the matter for a full hearing.

Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect.

2. *See* Protest, Petition to Intervene, Motion to Reject as to One Wholesale Customer, Motion for Partial Summary Disposition, Motion for Rejection as to All Wholesale Customers and Request for a Hearing and Suspension for Maximum Statutory Period, Joint Appendix (JA) 7.

3. Petitioner also contended that intervenor could not unilaterally increase its rates under the terms of their contract. This contention—which raises issues sharply different both procedurally and substantively from those addressed in this opinion—was pressed by petitioner in a separate action, recently decided by this court. *Papago Tribal Utility Authority v. FERC*, 610 F.2d 914 (D.C.Cir. 1979). The parties have not addressed this issue in this case, nor shall we. In view of our disposition of this petition for review, we need not consider the effect of the recent *Papago* decision on it.

4. JA 29–31.

5. *See* Order Accepting for Filing and Suspending Proposed Rate Increase, Providing for Hearing, Instituting Section 206 Investigation, Granting Motion for Summary Disposition in Part, Denying Motion to Reject, Denying Request for Waiver, and Establishing Procedures, JA 33.

6. *See* Application for Rehearing, JA 46.

7. *See* Order Denying Application for Rehearing, JA 69.

Petitioner thereafter filed this petition, seeking review of the February 28 order and the April 30 denial of a rehearing. It asserts that this court has jurisdiction under Section 313(b) of the Act, 16 U.S.C. § 825*l* (1976). The first question we must resolve is whether FERC's order accepting the filing, denying summary disposition, and setting the case for hearing is reviewable under this provision. Of course if material issues of fact formed the basis for petitioner's challenge, we could not take jurisdiction, for the Commission has made no findings of fact for us to review. However, petitioner has alleged that the challenged rate filing contains *patent defects* requiring rejection *on its face.* We therefore must decide whether this court has jurisdiction under Section 313(b) to review orders denying motions for rejection of rate filings challenged on the ground of patent defects in form or content.[8]

## I

Section 313(b) provides: "Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals * * *." 16 U.S.C. § 825*l*(b) (1976). Since this provision is not limited on its face to final orders, it might be read as authorizing judicial review of interlocutory orders of any nature at any stage of an administrative proceeding. The courts have long held, however, that review under Section 313(b) is limited to orders of definitive impact, where judicial abstention would result in irreparable injury to a party. *Niagara Mohawk Power Corp. v. FPC,* 538 F.2d 966,

969 (2d Cir. 1976); *see General Motors Corp. v. FERC,* 607 F.2d 330, 331 (10th Cir. 1979). The Supreme Court held in *FPC v. Metropolitan Edison Co.,* 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408 (1938), that Section 313(b) should not "be construed as authorizing a review of every order that the Commission may make, albeit of a merely procedural character." *Id.* at 383, 58 S.Ct. at 967. The Court said that "[s]uch a construction, affording opportunity for constant delays in the course of the administrative proceeding for the purpose of reviewing mere procedural requirements or interlocutory directions, would do violence to the manifest purpose of the provision." *Id.* at 383–384, 58 S.Ct. at 967.

Finality for the purpose of judicial review of administrative actions is not easy to define; yet the courts must be as precise as possible in defining reviewable orders. In this way we may prevent the delay that might otherwise occur if parties were induced to file petitions for review to find out whether given orders are reviewable.[9] When the courts intervene in the midst of agency proceedings, they often disrupt the administrative process and unnecessarily burden their dockets. We are therefore loath to do so. The best way to avoid this unfortunate drag on the administrative and judicial processes is to adhere to traditional principles of finality, and to define for the benefit of agencies and litigants what orders are subject to immediate judicial review.

Our definition of finality under Section 313(b) begins with the statement of the Supreme Court in *FPC v. Metropolitan Edison Co., supra,* 304 U.S. at 384, 58 S.Ct. at

8. In this case the order accepting intervenor's tariff filing will be followed by a hearing under § 205(e) into the lawfulness of the new rates. We are not concerned in this case with orders that accept tariff filings and allow them to take effect without investigation or refund obligation. Such orders would present different questions of reviewability. With that limitation understood, we will use the phrases "order accepting a rate filing" and "order denying a motion to reject a rate filing" interchangeably for purposes of this opinion.

9. The Supreme Court has held that the issue of *standing* for purposes of obtaining judicial review under the Act must be "determined by the specific circumstances of individual situations[.]" *United States ex rel. Chapman v. FPC,* 345 U.S. 153, 156, 73 S.Ct. 609, 612, 97 L.Ed. 918 (1953); *see Northwestern Public Service Co. v. FPC,* 520 F.2d 454, 457 (D.C.Cir. 1975). The issue of *finality,* however, is somewhat more susceptible to precise definition, since it hinges on the nature of the order rather than on the infinitely various characteristics of the parties claiming injury.

967, that this provision relates to "orders of a definitive character dealing with the merits of a proceeding before the Commission and resulting from a hearing upon evidence and supported by findings appropriate to the case." Ordinarily, an agency order is final for purposes of appellate review when it "imposes an obligation, denies a right, or fixes some legal relationship as a consummation of the administrative process[.]" *Cities Service Gas Co. v. FPC*, 255 F.2d 860, 863 (10th Cir.), *cert. denied*, 358 U.S. 837, 79 S.Ct. 61, 3 L.Ed.2d 73 (1958). This court has emphasized, however, that finality of administrative orders must be evaluated in "pragmatic" terms. *Conway Corp. v. FPC*, 510 F.2d 1264, 1267 (D.C.Cir. 1975), *aff'd*, 426 U.S. 271, 96 S.Ct. 1999, 48 L.Ed.2d 626 (1976). The Supreme Court agrees:

> The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control.

*Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 425, 62 S.Ct. 1194, 1204, 86 L.Ed. 1563 (1942). *See also Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970). The reviewability of an order must therefore be determined by reference to its practical function and consequences in the relevant statutory scheme. We must ask first whether the order is final; second whether, if unreviewed, it would inflict irreparable injury on the party seeking review; and third whether judicial review at this stage of the administrative process would invade the province reserved to the discretion of the agency.

## II

### A

■ To determine whether the order under consideration in this case is final for purposes of judicial review, we must first place it in its proper context within the administrative process. Under the Federal Power Act a utility selling electricity subject to the jurisdiction of FERC must adhere to rates and terms of sale on file with the Commission. In order to change its rates or terms the utility must file a proposed change with the Commission 30 days before the change is to take effect.[10] The Commission may reject filings of proposed changes if the filings are grossly defective in form, or "so patently a nullity as a matter of substantive law, that administrative efficiency and justice are furthered by obviating any docket at the threshold rather than opening a futile docket." *Municipal Light Boards v. FPC, supra*, 450 F.2d at 1346; *see* 18 C.F.R. § 35.5 (1979). Once it accepts a filing, FERC has the authority to suspend the new rates for up to five months, and to schedule a hearing to determine whether the rates are just and reasonable. If FERC fails to reach such a determination within the suspension period, the new rates go into effect. If, however, the rates are ultimately determined to be excessive, the utility is obligated to refund the excess to its customers, with interest. The utility seeking a change in rates has the burden of proof to show that the change is justified, and the Commission has the authority to prescribe rates and terms of sale that are just and reasonable. *See* Section 205(e) of the Act, 16 U.S.C. § 824d(e) (1976).

■ The quintessential reviewable order under the Act is a final determination by the Commission concerning the justness and reasonableness of the rate filing.[11] Such a determination, generally made after a

---

**10.** For good cause shown, FERC may permit changes in rates without the 30-day notice period. Section 205(d) of the Act, 16 U.S.C. § 824d(d) (1976).

**11.** A party must file for rehearing pursuant to § 313(a) before it is permitted to file a petition for review pursuant to § 313(b). Technically, the Commission's order denying such motion for rehearing is the final order. *See City of Vanceburg v. FERC*, 571 F.2d 630, 642 (D.C.Cir. 1977), *cert. denied*, 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 108 (1978).

lengthy hearing during which all relevant legal and factual questions are aired, disposes of all significant disputed issues in the case on their merits and fixes the obligations of the parties. The decision to accept a rate filing, in contrast, is undeniably interlocutory. Acceptance of a filing decides nothing concerning the merits of the case; it merely reserves the issues pending a hearing. The decision is quickly made, as the Act demands.[12] There is no time for a considered judgment concerning facts or law. We have described the order as taking a "first cut" at the materials presented to the Commission. *Municipal Light Boards v. FPC, supra*, 450 F.2d at 1348. At this stage there is no factual record that a reviewing court might examine, and usually little legal analysis by the Commission that the court might evaluate. The refusal to reject a rate filing is analogous to the denial of a motion to dismiss under the rules of civil procedure, *id.* at 1346, and should be treated the same way for purposes of appeal or review. *See Rosenthal & Co. v. Commodity Futures Trading Com'n*, 614 F.2d 1121, 1128 (7th Cir. 1980). Judicial intervention at such a point would be cumbersome and inappropriate. *Texas Gas Corp. v. FPC*, 250 F.2d 27, 29–30 (D.C.Cir. 1957); *cf. Switzerland Cheese Ass'n v. E. Horne's Market, Inc.*, 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966) (denial of summary judgment motion not appealable under 28 U.S.C. § 1292(a)(1)).

Acceptance of a filing, coupled with scheduling of a hearing, is the *initiation* of an administrative proceeding; judicial review properly follows the *conclusion* of the proceeding. As we can see by the issues raised by petitioner in its motion to reject,[13] the same issues now posed for summary disposition will also constitute the principal issues in the full administrative hearing. Perhaps the Commission will resolve the claims of the parties and obviate any injury to them if we allow it to complete its proceedings. Thus we would be "decid[ing] hypothetical questions and wast[ing] appellate resources by intervening at this stage." *Green v. Dep't of Commerce*, 618 F.2d 836, 839 (D.C.Cir. 1980). Conversely, new legal issues may arise during the further course of the administrative proceeding, perhaps prompting the parties to return to this court for a second appellate review. *Id.*, 618 F.2d at 839–840. In any event, at this stage we would be acting with little factual predicate and without the benefit of the Commission's views on relevant questions of law and regulatory policy. Replacing one comprehensive judicial review proceeding, based on a full record, with piecemeal proceedings based almost solely on a bare rate filing would be a poor technique of judicial administration, with unfortunate consequences for courts, agencies, and litigants as well. Thus we cannot conclude that the order presented for review in this case is final for purposes of Section 313(b).

## B

■ Only when parties face the prospect of irreparable injury, with no practical means of procuring effective relief after the close of the proceeding, might they be entitled to immediate review of a nonfinal order. *See Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). But petitioner in this case will suffer no irreparable injury if denied immediate judicial review. Although petitioner became liable to pay intervenor's new rates after the five-month suspension period ended, its excess payments will be refunded, with interest, if the new rates are not proven to be just and reasonable.[14] And if the

---

12. The Act indicates that the Commission's decision to suspend and investigate the new rates is to be made "at once," *see* § 205(e) of the Act, 16 U.S.C. § 824d(e) (1976). In this case one month elapsed between petitioner's motion to reject and FERC's denial of that motion.

13. *See* text at notes 2–3 *supra*.

14. During oral argument the attorneys agreed that intervenor voluntarily ceased charging petitioner the new rate in late 1979, in response to this court's action in *Papago Tribal Utility Authority v. FERC, supra* note 3. They could not

Commission ultimately determines that intervenor's new rates are just and reasonable, then petitioner will have been denied no right to which it is entitled. Congress devised the suspension and refund provisions of Section 205(e) to protect utility customers from the interlocutory consequences of an unjust or unreasonable rate increase, and this court has neither reason nor authority to augment those protections by holding that FERC's order accepting the rate filing is reviewable at this time.[15]

We do not deny that petitioner would *profit* if we were to order rejection of the rate filing at this point. It would receive the benefit of several additional years of electricity purchases at the former rate, even if intervenor's costs have risen in the meantime. However, the purpose of the Commission's authority to reject a rate filing is not to confer this type of undeserved benefit upon intervenor's wholesale customers, but to facilitate the orderly processes of the Commission. *See American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 537, 90 S.Ct. 1288, 1291, 25 L.Ed.2d 547 (1970). Thus petitioner has suffered no injury cognizable under the Act that cannot be remedied upon review of the final order of the Commission.[16]

### C

The conclusion that orders denying motions for rejection of rate filings on the ground of patent defects are not reviewable under Section 313(b) also follows from the nature of the relationship between the regulatory agencies and the courts. Under a contrary rule the courts would be drawn into disputes properly subject to the discretion of the Commission.

The Act makes no mention of either a power or a duty of the Commission to reject patently invalid rate filings. However, pursuant to its authority to issue regulations "necessary or appropriate to carry out the provisions of" the Act, Section 309 of the Act, 16 U.S.C. § 825h (1976),[17] FERC has promulgated 18 C.F.R. § 35.5 (1979):

> The Secretary, pursuant to the Commission's rules of practice and procedure and delegation of Commission authority, shall reject any material submitted for filing with the Commission which patently fails to substantially comply with the applicable requirements set forth in this Part, or the Commission's rules of practice and procedure.

By means of this regulation the Commission has sought to ensure that rate filings submitted to it will contain sufficient information to enable it to "reach an informed and equitable decision as to the necessity for an investigation, hearing, and suspension, and to permit the Commission and parties in interest with [*sic*] meaningful opportunity to prepare for any proceeding." *Municipal Light Boards v. FPC, supra*, 450 F.2d at 1348.

By its terms the regulation quoted above employs a flexible standard of "substantial

---

agree on whether the higher charges paid by petitioner prior to this action have yet been refunded to petitioner.

**15.** This court has observed that the Commission's power to order a refund of excessive charges "may be inadequate to protect the customer's interest fully," *Municipal Light Boards v. FPC*, 450 F.2d 1341, 1351 (D.C.Cir. 1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972) (*citing FPC v. Hunt*, 376 U.S. 515, 524–525, 84 S.Ct. 861, 866–867, 11 L.Ed.2d 878 (1964)). But as the cited passage in *Hunt* reveals, the Supreme Court was referring to the danger that the effect of an overpriced newly-certificated service might "splash over" into unregulated intrastate markets, thereby generating reciprocal price pressures in the regulated markets. Whatever the validity

of that economic theory in a two-tiered natural gas market, no similar danger exists in this case: the service in this case is not newly-certificated, and there is no unregulated market into which price pressures might "splash."

**16.** We do not imply that orders *rejecting* rate filings are not immediately reviewable. Such orders are genuinely final orders, disposing of all the issues in the case, and have been uniformly treated as immediately reviewable by the courts. *E.g., FPC v. Texaco, Inc.*, 377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964); *North Central Truck Lines, Inc. v. ICC*, 559 F.2d 802 (D.C.Cir. 1977).

**17.** *See FPC v. Texaco, Inc., supra* note 16, 377 U.S. at 39–45, 84 S.Ct. at 1109–1112.

compliance," which can best be judged by the Commission in the light of its own needs. The Commission possesses "broad powers to structure the proceedings before it." *Louisiana Power & Light Co. v. FPC*, 526 F.2d 898, 910 (5th Cir. 1976). The agency's choice of procedure—whether to dispose of a case summarily or to schedule a hearing—is not a proper concern of the courts in the absence of substantial prejudice to a party. Accordingly, this court has held that the agency may relax, modify, or waive its filing requirements. *Municipal Electric Utility Ass'n v. FPC*, 485 F.2d 967, 975 n.28 (D.C.Cir. 1973). As we said in *City of Groton v. FERC*, 584 F.2d 1067, 1070 (D.C.Cir. 1978), "[T]he Commission ha[s] broad discretion in deciding not to reject the tariff, either at the time of filing or at a later time."

The Supreme Court has emphasized that the courts have no jurisdiction to review agency orders where such review would necessarily infringe on the statutory role of the agency. In *Arrow Transportation Co. v. Southern Railway Co.*, 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963), the Supreme Court held that under the Interstate Commerce Act, *now codified at* 49 U.S.C.A. § 10101 *et seq.* (1979),[18] the courts have no power to suspend railroad rates pending a hearing by the Interstate Commerce Commission (ICC). The Court said that the power to suspend rates is vested solely and exclusively in the ICC. *Id.* at 667, 83 S.Ct. at 988. The Court reasoned that any judicial authority to suspend rates "would create the hazard of forbidden judicial intrusion into the administrative domain," *id.* at 670, 83 S.Ct. at 990, because it necessarily would involve inquiry into the reasonableness of rates. *Id.*[19]

More recently, in *Southern Railway Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444,

99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979), the Supreme Court unanimously held that an ICC decision not to suspend a proposed railroad rate increase, and not to conduct an investigation of its lawfulness, is not reviewable under the Interstate Commerce Act. *Accord, Asphalt Roofing Manufacturers Ass'n v. ICC*, 567 F.2d 994 (D.C.Cir. 1977). In *Southern Railway*, after the railroad filed an increased tariff with the ICC, protestant shippers filed motions to suspend the new rates and to investigate their lawfulness, contending that the new rates were "patent[ly] illegal[ ]." 442 U.S. at 451, 99 S.Ct. at 2392. Without holding a hearing, the ICC refused to suspend the rates and allowed them to become effective without investigation. The shippers sought review in the courts. The Supreme Court held that the ICC order was not judicially reviewable because it was not a decision on the merits, *id.*, and because its consequences to the protestant shippers were relatively minor, *id.* at 454–455, 99 S.Ct. at 2394, 2397. It noted that the shippers could file charges with the ICC alleging that the rates were unlawful, thereby initiating an investigation under 49 U.S.C. §§ 13 and 15 (1976). The Court held that the investigation provision, Section 15(8) of the Interstate Commerce Act, "was designed to avoid [the] disruptive consequences of judicial interference." *Id.* at 460, 99 S.Ct. at 2397. It said that "[j]udicial review would once again undermine the Commission's primary jurisdiction by bringing the courts into the adjudication of the lawfulness of rates in advance of administrative consideration." *Id.* It also noted the practical problems that would ensue if the ICC were required, under threat of judicial review and reversal, to analyze and explain with care the basis for its decisions whether to order investigations into the lawfulness of rates.

---

**18.** For convenience we will hereafter cite to the older codification of the Interstate Commerce Act, 49 U.S.C. §§ 1–16 (1976), since the decisions we discuss predate the new codification.

**19.** On this point the scheme of the Federal Power Act is nearly identical to that of the Interstate Commerce Act. This court has therefore held, on the strength of *Arrow Transportation Co. v. Southern R. Co.*, 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963), that we have no power to review orders concerning suspension of rates under § 205(e) of the Act. *Municipal Light Boards v. FPC, supra* note 15, 450 F.2d at 1349–1350; *see* K. Davis, Administrative Law Treatise § 28.19 at 966 (Supp.1970).

The force of these Supreme Court holdings becomes evident when we consider the impact of nonreviewability on the parties to *Arrow Transportation* and *Southern Railway.* The decision to suspend rate filings may inflict a large and irreparable economic loss on the carrier. As the *Southern Railway* Court noted, "[T]he pre-effective suspension of a new rate has a greater and more immediate impact on carriers and shippers than does the initiation of an investigation whose outcome is inevitably in doubt." 442 U.S. at 459, 99 S.Ct. at 2395. And the decision in *Southern Railway*—to allow a new tariff to go into effect without suspension or investigation—shifts the procedural onus onto the aggrieved shippers to file an independent administrative action in which they will bear the burden of proof, and also restricts the relief they may ultimately obtain to actual damages rather than to the full overcharge that would have been available had the Commission proceeded to an investigation. *Id.* at 454–455, 99 S.Ct. at 2394. Thus these two decisions show that a nonfinal administrative order may be unreviewable—even though it might result in serious irreparable injury to a party—if immediate judicial review would undermine the authority of the agency acting within the scope of its discretion.

From *Arrow Transportation* and *Southern Railway* it follows *a fortiori* that the order presented for review in this case is nonreviewable. The decision whether to reject or to accept a rate filing is based on precisely the same information, and primarily the same considerations, that govern decisions to suspend or not to suspend, to investigate or not to investigate. The decision to accept a rate filing is a necessary adjunct to the unreviewable decision to suspend and investigate. It would make little sense to declare orders concerning suspension and investigation unreviewable if the courts may review the related order to accept a rate filing. A holding that we could assume jurisdiction in this case would, in effect, avoid the strictures of *Arrow Transportation* and *Southern Railway* on the nicest of distinctions.

Moreover, the considerations that led the Supreme Court to declare orders concerning suspension and investigation of rates nonreviewable also apply to this case. The order presented for review in this case is not a decision on the merits, *cf. Southern Railway Co. v. Seaboard Allied Milling Corp., supra,* 442 U.S. at 451, 99 S.Ct. at 2392. Its consequences to petitioner are relatively minor, *cf. id.* at 454–455, 99 S.Ct. at 2394. For us to judge whether FERC erred in accepting intervenor's rate filing would "undermine the Commission's primary jurisdiction by bringing the court[ ] into the adjudication of the lawfulness of rates in advance of administrative consideration," *cf. id.* at 460, 99 S.Ct. at 2397, and would place an intolerable burden on FERC by second-guessing its preliminary and necessarily hasty decisions regarding acceptance of rate filings, *cf. id.* at 457, 99 S.Ct. at 2395.

Indeed, the considerations that underlay the decisions in *Arrow Transportation* and *Southern Railway* even more strongly militate against review of the order challenged in this case. Those orders were declared unreviewable despite the fact that the petitioners might suffer irreparable injury from them. In the case at bar petitioner's interests may be fully vindicated upon review of the final order of the Commission.

We therefore conclude that orders accepting rate filings challenged on grounds of patent invalidity are nonreviewable, because immediate review of such orders would invade the province reserved to the discretion of the agency.[20]

---

**20.** If an order accepting a rate filing were clearly outside the bounds of FERC's statutory authority, it would present different issues of reviewability. *See Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 638 n.17, 98 S.Ct. 2053, 2058, 56 L.Ed.2d 591 (1978); *Niagara Mohawk Power Corp. v. FPC,* 538 F.2d 966, 970 (2d Cir. 1976). In such a case immediate review might not invade the province of the agency. For example, in *Indiana & Michigan Electric Co. v. FPC,* 502 F.2d 336 (D.C.Cir. 1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975), this court reviewed an order of the Commission suspending a new electric rate filing. Ordinarily, such an order is nonreviewable because the decision to suspend or not to

### D

■ The three considerations that lead us to conclude we lack jurisdiction to review this order—finality, irreparable injury, and interference with agency discretion—also explain why orders accepting rate filings challenged on *Sierra-Mobile* grounds [21] have been treated as reviewable. The *Sierra-Mobile* doctrine holds that a utility cannot file a revised rate schedule under Section 205(d) in contravention of its contractual obligations. *See generally Richmond Power & Light Co. v. FPC*, 481 F.2d 490, 491–493 (D.C.Cir.), *cert. denied*, 414 U.S. 1068, 94 S.Ct. 578, 38 L.Ed.2d 473 (1973). For example, if an electric wholesaler has contracted to provide a certain quantity of electric power to a local utility at a fixed price, the wholesaler is not entitled to increase the price charged to the utility by merely filing a revised tariff under Section 205(d). Rather, the contractual rate must remain in effect until the Commission determines in a proceeding under Section 206 that the contractual rate is not just and reasonable. The primary practical consequence of the *Sierra-Mobile* doctrine is that it enables a purchaser of power under a fixed-price contract to continue to purchase at the contractual rate during the period of time between the seller's initiation of a price increase and the Commission's final determination. [22]

The Supreme Court [23] and this court [24] have treated orders deciding *Sierra-Mobile* claims as immediately reviewable under Section 313(b). At first blush, this may appear anomalous since such orders are a subcategory of orders accepting or rejecting

suspend a rate filing is entrusted to the Commission, not to the courts. *Arrow Transportation Co. v. Southern R. Co., supra* note 19. However, in *I & M Electric* the Commission had failed to act upon the rate filing until after the time at which it was scheduled to take effect under the Act. The court held that the Commission had no authority to suspend the rates under those circumstances. 502 F.2d at 342–343. The assumption of jurisdiction in that case, therefore, was based not on the invalidity of the rate filing, but on the impermissible extension of agency authority.

On a similar theory *Municipal Electric Utility Ass'n v. FPC*, 485 F.2d 967 (D.C.Cir. 1973), may be distinguished from the case at bar. In *Municipal Electric* this court assumed jurisdiction to review a decision of the Commission accepting a set of rate filings. The new rates were scheduled to take effect more than 90 days after the filing, in contravention of 18 C.F.R. § 35.3(b). The petitioners argued, in effect, that the Commission had no authority under the regulation to accept rate filings more than 90 days in advance of their effective date. The court rejected this argument on the merits, 485 F.2d at 973–976. Because the basis for the petition to review was an allegedly illegal extension of agency authority, rather than alleged abuse of agency discretion, the assumption of jurisdiction in *Municipal Electric* was not plainly inappropriate under the interpretation of § 313(b) we follow in this case.

**21.** *See United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); *FPC v. Sierra Pacific Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956).

**22.** A second effect of the *Sierra-Mobile* doctrine is that, in order to obtain an increase in

the contractual rate, a seller must prove that the existing contractual rate is unjust or unreasonable under § 206(a). For example, the seller could prove that the rate "might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory." *FPC v. Sierra Pacific Power Co., supra* note 21, 350 U.S. at 355, 76 S.Ct. at 372. The burden on a seller seeking to increase its rates under § 205(e) is merely to show that the new rate is just and reasonable. *See id.* at 353–355, 76 S.Ct. at 371–372. *But cf. United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div.*, 358 U.S. 103, 112 n. 7, 79 S.Ct. 194, 199, 3 L.Ed.2d 153 (1958) (suggesting that the burdens of proof under the two parallel sections of the Natural Gas Act are "equally stringent").

**23.** *United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div., supra* note 22. *FPC v. Sierra Pacific Power Co., supra* note 21, arose on review of a final Commission decision. *United Gas Pipe Line Co. v. Mobile Gas Service Corp., supra* note 21, the procedural history of which is recounted in the appellate court's opinion, 215 F.2d 883, 885 (3d Cir. 1954), arose on review of a decision in a separate administrative proceeding brought by the buyer.

**24.** *See, e. g., Papago Tribal Utility Authority v. FERC, supra* note 3; *Appalachian Power Co. v. FPC*, 529 F.2d 342 (D.C.Cir.), *cert. denied*, 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76 (1976); *Borough of Lansdale v. FPC*, 494 F.2d 1104 (D.C.Cir. 1974); *Richmond Power & Light v. FPC*, 481 F.2d 490 (D.C.Cir.), *cert. denied*, 414 U.S. 1068, 94 S.Ct. 578, 38 L.Ed.2d 473 (1973).

rate filings challenged on grounds of patent invalidity, which we here find unreviewable. However, *Sierra-Mobile* orders are sharply different from orders like that presented for review in this case in their finality, their irremediable consequences, and their relation to agency discretion.

First, a *Sierra-Mobile* order finally disposes of a substantive claim of right. When a seller of power subject to FERC jurisdiction files a rate change with the Commission, a purchaser that believes it is protected from an interim increase by the *Sierra-Mobile* doctrine will enter a motion to reject the rate filing. *E. g.*, JA 11–14. At that time the Commission reaches a determination on the *Sierra-Mobile* issues. This decision is a purely legal question of contractual interpretation, unrelated to the factual and regulatory issues to be decided in the later hearing. The decision of the Commission at this point is effectively a final disposition of the purchaser's contractual claim of right, for the *Sierra-Mobile* question will not ordinarily be at issue again in the later Section 205(e) hearing.[25] An immediate review of the Commission's determination will not disrupt the continuing proceeding, nor will it raise the danger of multiple appellate proceedings concerning identical issues. Moreover, the reviewing court will have before it all information relevant to the *Sierra-Mobile* question: namely, the contract between the parties, the rate filing, and the Commission's opinion.

Second, the injury to a purchaser of electric power from an erroneous order denying a *Sierra-Mobile* claim is quite different from the injury to such a purchaser from an erroneous decision to accept a patently invalid rate filing. The *Sierra-Mobile* petitioner will have been denied its contractual right to purchase electric power at the agreed-upon rate during the administrative process. Such a right, being interlocutory in nature, cannot be restored upon review of a final order. In contrast, a petitioner challenging an invalid rate filing on other grounds has no relevant interlocutory rights other than the right to proper procedures,[26] which can be vindicated upon appeal from the final order.

Third, the Commission has no discretion to accept a Section 205(e) rate filing that contravenes a private contract. The terms of such a contract can be altered only after a Section 206 proceeding. The Commission's determination whether to grant a *Sierra-Mobile* motion to reject a rate filing is a purely legal matter of contractual interpretation. Thus by reviewing the Commission's determination the court does not infringe upon the discretion of the agency.

Orders disposing of *Sierra-Mobile* claims are therefore immediately reviewable in the courts, and distinguishable from the order challenged in this case.

## III

It has been the rule in this circuit for over 20 years that Section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r (1976), and Section 313(b) of the Federal Power Act, which are identical, do not permit immediate judicial review of orders which do not reach the merits of a rate proceeding, but which "merely announce[ ] [the Commission's] intention to embark on a hearing concerning the lawfulness of the rate[.]"[27] *Texas Gas Corp. v. FPC, supra*, 250 F.2d at 29. Today we reaffirm that principle. Indeed, our holding in this case may be compelled by the Supreme Court's decision in *American Farm Lines v. Black Ball Freight Service, supra*, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547. In that case the Court

---

**25.** In the absence of intervening judicial review of the *Sierra-Mobile* order, the Commission presumably could reexamine the issue during the § 205(e) hearing, but there is no reason to expect that it would ordinarily do so.

**26.** In this, we are abstracting somewhat from the facts of this case. In actuality, petitioner has also asserted a *Sierra-Mobile* right against intervenor. *See* note 3 *supra*. Such a right is,

of course, interlocutory, *see* text at note 22 *supra*, and merits immediate judicial review if denied.

**27.** Unless, of course, acceptance of the filing would irreparably violate some substantial independent right of a party. *See* Part II–B *supra*.

faced a similar question of reviewability in the context of the Interstate Commerce Act. A motor carrier had filed an application for temporary operating authority with the ICC, which was granted despite the argument of competing carriers that the filing violated ICC requirements. The competing carriers sought review in the courts. The Supreme Court, however, ruled that the ICC's decision to relax its filing requirements was not reviewable:

> We agree with the Commission that the rules were promulgated for the purpose of providing the "necessary information" for the Commission "to reach an informed and equitable decision" on temporary authority applications. * * * The rules were not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion * * *. Thus there is no reason to exempt this case from the general principle that "[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party." *NLRB v. Monsanto Chemical Co.*, 205 F.2d 763, 764. * * *

*Id.* at 538–539, 90 S.Ct. at 1292. And even if the long-standing precedent in this court and the Supreme Court were not sufficiently clear, the Supreme Court's decision last year in *Southern Railway*—discussed above [28]—should remove all doubt.[29]

Certain cases in this circuit, however, have introduced a degree of uncertainty into this important question of appellate jurisdiction. In *Papago Tribal Utility Authority v. FERC*, 610 F.2d 914 (D.C.Cir. 1979); *City of Groton v. FERC, supra*, 584 F.2d 1067; and *Municipal Light Boards v. FPC, supra*, 450 F.2d 1341, this court has considered petitions for review of orders accepting rate filings challenged on grounds of patent invalidity and has reached the merits. Moreover, in *Associated Press v. FCC*, 448 F.2d 1095, 1103 (D.C.Cir. 1971), we said:

> We recognize, however, that an agency has the power and in some cases the duty to reject a tariff that is demonstrably unlawful on its face. Thus, an agency will reject a tariff that conflicts with a statute, agency regulation or order, or with a rate fixed in a contract sanctioned by statute; similarly, a tariff will be rejected if it is unlawful without prior agency approval, and approval has not been obtained. In such cases the refusal of an agency to reject a tariff may be reviewed by the courts. * * *

(Footnote omitted.) However, a close examination of the opinions in these cases reveals that they were not intended to create a new and unwarranted exception to the final judgment rule of Section 313(b).

We observe, first, that the above quoted dictum in the *Associated Press* case was written before the Supreme Court's recent decision in *Southern Railway*, which reemphasized the importance of the nonreviewability doctrine in the context of nonfinal administrative orders. Moreover, though the quotation from *Associated Press* overstates the authority of the courts to review agency decisions to accept tariff filings, an examination of the cases cited in a footnote as illustrative of the quoted proposition, 448 F.2d at 1103 n.9, belies the impression that the court intended to broaden reviewability of nonfinal orders beyond its traditional

---

**28.** *See* text at notes 19–20 *supra*.

**29.** We also draw support from the Second Circuit's ruling that denial of a motion to dismiss an FPC investigation is not reviewable under § 313(b), *Niagara Mohawk Power Corp. v. FPC, supra* note 20, and from the Tenth Circuit's decision that an order instituting an investigation into the lawfulness of the rates and practices of a natural gas company is "in no proper sense a definitive order. Rather, it is a mere step in procedure." *Canadian River Gas Co. v. FPC*, 110 F.2d 350, 352 (10th Cir.), *cert. denied*, 311 U.S. 693, 61 S.Ct. 76, 85 L.Ed. 449 (1940). *See also Rosenthal & Co. v. Commodity Futures Trading Com'n*, 614 F.2d 1121 (7th Cir. 1980) (holding unreviewable a CFTC order denying a motion to dismiss a claim).

bounds. *Associated Press* is best understood as stating that an agency order accepting a rate filing may be reviewable if the order violates a *duty* imposed on the agency.[30] Since an agency is permitted to relax, modify, or waive its filing requirements, *City of Groton v. FERC, supra,* 584 F.2d at 1070 n.8; *id.* at 1073 n.14, FERC owes no one the *duty* to reject a rate filing, even if it is patently invalid. The filing requirements are " 'merely aids to the exercise of the agency's independent discretion,' " *id.* at 1070 (*quoting American Farm Lines v. Black Ball Freight Service, supra,* 397 U.S. at 539, 90 S.Ct. at 1292), giving rise to no duty in the agency and no power of review in the courts. Indeed, in *Associated Press* itself the court determined that the relevant filing requirements were intended merely "to provide the Commission with the information necessary to decide whether an investigation and suspension of proposed rates should be ordered," 448 F.2d at 1104, and determined that there was no showing of "substantial prejudice" to the complaining party from the alleged violation of the requirements. *Id.* For these reasons—equally applicable in the case at bar—the *Associated Press* court concluded that "we will not review the judgment of the Commission." *Id.*

Nor do *Municipal Light Boards, City of Groton,* or *Papago Tribal Utility Authority* require an assumption of jurisdiction in this case. In none of those cases does the court reverse a Commission decision to accept filing; indeed, it is difficult to imagine the circumstances in which the court would reverse such a decision under the closely "circumscribed" rule of appellate review espoused in those cases. *See, e.g., City of Groton v. FERC, supra,* 584 F.2d at 1070. More importantly, *Municipal Light Boards* and *City of Groton*—both of which predate *Southern Railway*—do not discuss the issue of reviewability,[31] and thus provide no explicit holding on the issue, one way or the other. The opinion in *Papago Tribal Utility Authority,* which was written after *Southern Railway,* does raise the issue, expressing uncertainty that the petitioners had established reviewability. 610 F.2d at 917 n.20. The court chose to sidestep the reviewability question, however, saying:

> The parties have not, however, focused on these questions, nor in the circumstances need we deal with them, for we are satisfied that on the merits petitioners' case is deficient.

*Id.* The *Papago Tribal Utility Authority* case thus leaves open the issue we decide today. In view of *Southern Railway,* we consider it important to reaffirm our traditionally limited approach to reviewability of nonfinal agency orders.[32]

## IV

Because we find that there has been no reviewable final order in the Commission's proceedings, we direct that the petition for review be

*Dismissed.*

---

**30.** Even if an agency violates a statutory duty, its order might not be immediately reviewable unless the order infringes a substantial interest of a party in a way which is not remediable upon review of final judgment. *See* Part II–B *supra.*

**31.** *Municipal Light Boards* does discuss the reviewability of *suspension* orders. 450 F.2d at 1349–1352. Relying on *Arrow Transportation,* the court holds an order suspending a rate filing for one day unreviewable. *Id.* It does not discuss the reviewability of orders accepting rate filings.

**32.** We observe that another panel of this court recently handed down a decision setting aside

an FERC order that suspended an electric power rate filing for five months and remanding to the Commission for a statement of reasons for the length of the suspension period. *Connecticut Light & Power Co. v. FERC,* 627 F.2d 467 (D.C.Cir. 1980). We note that that case is distinguishable from this one. The basis for the decision in *Connecticut Light & Power* was the alleged failure of the Commission to provide the "statement in writing of its reasons" for the suspension, as required by § 205(e) of the Act. The case did not involve a challenge to the Commission's exercise of its discretion.