998 F.2d 7
 302 U.S.App.D.C. 389
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 No. 91-1363.
 United States Court of Appeals, District of Columbia Circuit.
 July 14, 1993.
 
 Before MIKVA, Chief Judge, D.H. GINSBURG, and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came on to be heard on the petition for review of an order of the Federal Energy Regulatory Commission and was argued by counsel. On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED by the Court that the petition for review is dismissed for the reasons set forth in the attached memorandum.
 
 MEMORANDUM
 
 3
 In this case natural gas consumers challenge two Federal Energy Regulatory Commission orders requiring various pipelines to revise their rates in order to give greater protection to "captive sales customers" at the expense of large customers. We conclude that these orders are not final and accordingly decline to review the petitioners' contentions at this juncture.
 
 I. BACKGROUND
 
 4
 In November 1990, the FERC promulgated Order No. 528, 53 FERC p 61,163 (1990), which states in general terms that pipelines should minimize the take-or-pay burden of their "captive sales customers"--defined by the Commission as residential and small commercial gas users. In Order No. 528-A, 53 FERC p 61,095 (January 31, 1991), the Commission states that, in order to achieve this objective, pipelines will be required to reallocate 50 percent of their take-or-pay settlement costs from their small customers to other customers. Later still, the Commission issued Order No. 528-B, 55 FERC p 61,372 (1991), which emphasizes that Orders No. 528 and 529-A are merely general "statements of policy" and that "parties remain free in individual cases to contend that the particular facts of those cases require flexibility in the application of those policies." Id. at 62,133.
 
 
 5
 Numerous parties challenged the validity of Orders No. 528 and 528-A before the Commission and in this court. The Commission refused to consider those challenges on the ground that both orders were merely policy statements. This court dismissed the petitions for review on the joint motion of the parties without reaching the merits and "without prejudice to petitioners' challenges to the application of order 528 in individual cases." See Tennessee Gas Pipeline v. FERC, No. 91-1069 (November 13, 1992).
 
 
 6
 The present petitioners are gas customers of CNG corporation. In October 1989, the FERC approved a settlement between CNG and its customers providing that CNG would "pass through" to its customers fixed take-or-pay charges "as billed" to CNG by its upstream suppliers. 49 FERC p 61,034 (1989). Since this settlement took place before the Commission issued Orders No. 528 and 528-A, those orders do not apply to the allocation of CNG's own take-or-pay costs. The orders do, however, govern the allocation of take-or-pay costs by several of CNG's upstream suppliers. Accordingly, the Commission required CNG to file tariffs tracking any changes in take-or-pay allocations implemented by the upstream suppliers. See Order, Dkt No. RP91-51-000 (January 16, 1991). CNG duly filed tariff sheets on December 17, 1990 and the Commission accepted them, effective in January 1990.
 
 
 7
 On March 1, 1991 the FERC suspended the rates of various pipelines (included those of Tennessee Gas--an upstream supplier of CNG) and required them to "file tariff sheets within 30 days ... to implement the reallocation of costs as required by Order No. 528-A, or some other method of allocating the fixed charges only that gives small customers as much or more relief." FERC Order, 56 FERC p 61,219 (March 1, 1991). The March 1 order also suspended CNG's rates and ordered CNG to file revised rates within 30 days after Tennessee filed its own revised allocations. As required by its settlement with its customers, CNG's revised rates were to "track Tennessee's revision on an as-billed basis."
 
 
 8
 The petitioners in the present case, along with others, sought rehearing of the March 1 order, arguing inter alia that the Commission should have held a hearing before issuing the order and that there was no factual basis for the small customer reallocation policy. The FERC rejected their rehearing request without reaching the merits of the petitioners' contentions. See FERC Order, 56 FERC p 61,141 (July 25, 1991). The agency explained that the March 1 order "did not prevent pipelines from submitting proposals that are different from the specific reallocation methodology set forth in Order No. 528-A, as long as small customers received as much or more relief." Accordingly, the March 1 order "made no final determination on the pipelines' proposed allocation methodologies, nor the small customer adjustments." The Commission concluded by saying that it "has not yet made any rulings on the merits of any substantive issues." The petitioners now seek review of the March 1 and July 25 orders.
 
 II. ANALYSIS
 
 9
 The petitioners challenge the Commission's March 1 and July 25 orders on four grounds: (1) as non-binding policy statements Orders 528 and 528-A do not provide proper authority for the Commission's rejection of CNG's initial filing; (2) the FERC violated Section 5 of the NGA by suspending CNG's rates without first holding a hearing to determine whether the rates were unjust and unreasonable; (3) the entire "small customer reallocation policy" is irrational because, inter alia, small customers are not the same as "captive" customers, who are the real targets of the Commission's solicitude; and (4) the FERC has impermissibly required CNG retroactively to decrease the rates for small customers and to increase the rates for large customers.
 
 
 10
 The FERC responds that this court cannot review the March 1 and July 25, 1991 decisions because they are not "final" as required under 15 U.S.C. § 717r(b). A final order is "one that imposes an obligation, denies a right, or fixes some legal relationship, usually at the consummation of an administrative process." State of Alaska v. FERC, 980 F.2d 761, 763 (D.C.Cir.1992). The FERC notes that, by the terms of the July 25 order, the March 1 order "made no final determinations" and did "not ma[k]e any rulings on the merits of any substantive issue." The merits of the petitioners' claim, the FERC explains, will be addressed only in the course of evaluating the rates proposed by CNG's upstream suppliers. The petitioners respond, however, that, by failing to address their claims, the FERC has made an effectively final decision with respect those claims: "[A]gency inaction may represent effectively final agency action that the agency has not frankly acknowledged." Sierra Club v. Thomas, 828 F.2d 783, 793 (D.C.Cir.1987).
 
 
 11
 We conclude that the Commission's orders rejecting the pipelines' original filings and requiring new filings are entirely interlocutory--a "first cut" at the issues presented to the Commission. Municipal Light Boards v. FPC, 450 F.2d 1341, 1348 (D.C.Cir.1971). See also Papago Tribal Util. Auth. v. FERC, 628 F.2d 235, 240 (D.C.Cir.1980) ("The decision to accept a rate filing ... in undeniably interlocutory"). The Commission will not make a final and reviewable decision until it approves the justness and reasonableness of the new rate filings--"generally ... after a lengthy hearing during which all relevant legal and factual questions are aired." Papago, 628 F.2d at 239-40. The Commission has assured the petitioners that in such a hearing they will be able to raise all of their current objections to the orders in question, and that until such a hearing takes place, the Commission's reallocation policy is merely preliminary and subject to revision. Cf. Her Majesty the Queen in Right of Ontario v. EPA, 912 F.2d 1525, 1532 (D.C.Cir.1990) (agency action reviewable because it is "unambiguous and devoid of any suggestion that it may be subject to subsequent revision").
 
 
 12
 Even if the Commission has "implicitly" ruled upon some of the petitioners' contentions, e.g., by proceeding in the face of their claim that it lacks authority to do so, the court should refrain from reviewing such rulings at this juncture; the petitioners may yet obtain all the relief they seek during a formal rate hearing or they may reach a settlement with the relevant pipelines. Thus, judicial intervention at this point could lead to "piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." FTC v. Standard Oil Co. of California, 449 U.S. 232, 242 (1980). See also State of Alaska, 980 F.2d at 764.
 
 
 13
 An analogy may help to illustrate the point. An appellate court will not usually review a trial court's liability decision when the amount of damages is yet to be determined. The parties may yet settle the case, or the damages may be so modest as not to engender an appeal. Again, if the court were to review the liability phase of the case in isolation, it would risk having to revisit the case after the damages are set, which would be inefficient, or resolving an issue that need not have been resolved, which would be injudicious.
 
 III. CONCLUSION
 
 14
 For the foregoing reasons we hold that the March 1, 1991 and July 25, 1991 FERC Orders are not final reviewable orders. In declining to review the merits of the FERC's decision, however, the court does not approbate the FERC's failure to brief the merits in the case. In the future, the Commission should present its jurisdictional objections in a motion for summary dismissal; if the court denies such a motion, the FERC will then be on notice that it must defend its actions on the merits. The petition for review is
 
 
 15
 Dismissed.