**NIAGARA MOHAWK POWER CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**Town of Massena, New York, Intervenor.**

**No. 922, Docket 75–4263.**

United States Court of Appeals, Second Circuit.

Argued April 30, 1976.
Decided July 19, 1976.

4. New Testament: Matthew, vi, 34.

Lauman Martin, Syracuse, N. Y., and Shea, Gould, Climenko, Kramer & Casey, New York, N. Y. (Milton S. Gould, New York City, of counsel), for petitioner.

Allan M. Garten, Atty., Washington, D. C., Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, Allan Abbot Tuttle, Sol., Washington, D. C., for respondent.

Fredrick D. Palmer, Wallace L. Duncan, James D. Pembroke, Duncan, Brown, Weinberg & Palmer, Washington, D. C., for intervenor.

Before LUMBARD, WATERMAN and MESKILL, Circuit Judges.

WATERMAN, Circuit Judge:

Petitioner Niagara Mohawk Power Corporation ("Niagara") seeks review under authority of section 313(b) of the Federal Power Act (the "Act"), 16 U.S.C. § 825*l*(b), of two orders issued by the Federal Power Commission. In the first order, entered September 25, 1975, the Commission denied Niagara's request to dismiss a then pending investigation of Niagara's alleged anticompetitive and discriminatory practices. In the second order, entered November 13, 1975, the Commission denied Niagara's application for a rehearing of the September 25, 1975, order.

On April 14, 1975, Niagara submitted for filing as a rate schedule a transmission agreement dated March 7, 1975, between Niagara and Consolidated Edison Company of New York, Inc. ("Con Ed"). Under the agreement Niagara was to wheel, that is, to transmit, power over . its. system from its connection with the Rochester Gas and Electric Corporation to its connection with Con Ed's Pleasant Valley 345 kv. substation. The proposed filing of the agreement was noticed on April 18, 1975, and was assigned FPC Docket No. E–9379.

On May 5, 1975, the Town of Massena, New York, filed with the Commission a protest and petition to intervene, together with a motion to reject the rate schedule filing, or, in the alternative, if the schedule be filed, to suspend its operation for five months and to order a hearing. Massena currently purchases electric power directly from Niagara. On May 30, 1974, a referendum had been held in that municipality and a majority of the Massena voters had approved the establishment of a municipal electric system. Establishment of the municipally-owned system required that Massena acquire the electric distribution facilities of Niagara in the municipality and that it enter into an agreement with Niagara for the transmission of power from the Power Authority of the State of New York ("PASNY") to Massena over existing Niagara transmission lines. To that end, Massena commenced a condemnation proceeding in the New York State courts on March 14, 1975.[1] Additionally, Massena had been unsuccessfully attempting to contract with Niagara for the wheeling of power from PASNY to Massena. It was after Niagara repeatedly failed to accept Massena's offer that an agreement between them be entered into that the municipality sought to intervene in the Niagara-Con Ed rate filing proceeding before the FPC. Massena contended, *inter alia,* that Niagara had refused to enter into meaningful contractual negotiations for the transmission of power, and

1. That case is *sub judice* in the St. Lawrence County Court.

that the proposed agreement between Niagara and Con Ed was "an integral part of an interstate program and combination to unlawfully monopolize the electric utility industry." The municipality claimed that the revenues generated by the filing, if accepted, would be unlawfully used by Niagara to strengthen its monopolistic position in the Massena area and unlawfully used to frustrate the establishment by municipalities such as Massena of consumer-owned electric systems.

On June 2, 1975, following the filing by both Con Ed and Niagara of answers to the protest petition and motion of Massena, the Commission accepted for filing Niagara's rate schedule and permitted it to become effective as of October 27, 1974, for the entire schedule period, terminating on October 31, 1975. While it denied Massena's motion for rejection or suspension, the Commission did grant Massena's petition to intervene for a limited purpose, that of asserting rights and interests specifically set forth in the petition to intervene.

On June 23, 1975, Massena filed with the FPC an application for rehearing and/or clarification of the Commission's June 2 order and decision, incorporating by reference all of its earlier May 5, 1975, allegations. Contending that the order failed to make clear the Commission's purpose in permitting the intervention, Massena argued that the petition raised a dispute of material fact and that it also specifically averred the relevance of the proposed rate schedule to Niagara's alleged anticompetitive practices, and, in view thereof, the Commission could not summarily dispose of Massena's claims.

By order issued July 23, 1975, the FPC granted Massena's application for rehearing, and, as suggested by Massena in its

rehearing-clarification application, ordered the institution of an investigation to commence December 16, 1975, under section 206(a) of the Act, 16 U.S.C. § 824e(a),[2] in Docket No. E–9379, to examine the merits of Massena's allegations of discriminatory treatment by Niagara. Three weeks later, Niagara filed a motion to dismiss the investigation, maintaining, *inter alia,* the irrelevance of its alleged anticompetitive practices to rate schedule filings, and also claiming that the Commission lacked jurisdiction under section 206 to either order an investigation or to compel Niagara to wheel power to Massena.

By order issued September 25, 1975, the FPC denied Niagara's motion to dismiss, stating that a full elucidation of the facts underlying the Niagara-Massena dispute would be necessary before a decision could be formulated. On October 9, 1975, Niagara moved for a rehearing of the September order, arguing once again for dismissal of the investigation and reiterating its claims of lack of jurisdiction and of the absence of any allegation by Massena that would render § 206 applicable. In its response of October 21, Massena countered that, as § 206 speaks both of unjust and discriminatory rates, and of any such practices which affect rates, the section did in fact provide jurisdiction for an FPC investigation. Niagara's discriminatory refusal to wheel power, Massena argued, is a practice which lowers Niagara's revenues and thus results in higher rates to Niagara's jurisdictional customers, and which also increases rates charged customers by, in general, lessening the competition in the electric utility industry. On November 13, 1975, the Commission denied Niagara's petition for a rehearing, and Niagara filed its petition in this

---

**2.** Section 206(a) provides:

Whenever the Commission, after a hearing had upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting [but see below] such rate, charge, or classification is unjust,

unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order.

[In U.S.Code (1970 ed.) this word appears as "affected," and subsequent "Supplement" volumes have not returned the language to "affecting," the original language.]

court for review of the September 25 and November 13 orders on December 2, 1975.

However, the filing of the petition for review marked no cessation in the flow of litigation. On November 21 and December 29, 1975, Massena requested that the service of testimony and exhibits in the pending FPC investigation in Docket No. E–9379 be deferred until, respectively, January 9, 1976, and February 28, 1976. Massena also served on Niagara at least one request for discovery. On February 4, 1976, Massena filed with the Commission an application under § 202(b) of the Act, 16 U.S.C. § 824a(b), requesting that FPC direct Niagara to establish physical interconnection of its facilities with the facilities in Massena which the municipality expected to obtain through the state condemnation proceeding. This § 202(b) application was assigned Docket No. E–9550 and is now pending before the Commission.

On February 10, 1976, the Commission moved this court to dismiss Niagara's petition for review on the ground, *inter alia,* that the orders under review were merely procedural and interlocutory and thus not appealable under § 313(b) of the Act. That motion was denied on February 24, 1976, without prejudice to renewal upon the argument of the merits, and it is now before us for adjudication. On April 12, 1976, the Commission filed here a second motion to dismiss on the ground that it had, by order of April 8, 1976, dismissed the investigation in Docket No. E–9379, and, in doing so, had rendered this appeal moot. The Commission's dismissal of the investigation was prompted by Massena's filing on February 27 of a request for its deferral and for an extension of procedural dates, Massena stating that if the Commission ordered physical interconnection pursuant to Massena's application in Docket No. E–9550, Massena would move for dismissal of the Docket No. E–9379 investigation. After receipt of this request Commission Staff Counsel then moved the FPC on March 11 to dismiss the investigation proceedings, and the motion was granted without prejudice to Massena's refiling its allegations of Niagara's anticompetitive practices in a separate docket before the Commission.

■ We agree with the FPC that its orders of September 25, 1975, denying Niagara's motion to dismiss the investigation, and November 13, 1975, denying Niagara's motion for a rehearing of the September order, are unreviewable, interlocutory orders, and that Niagara's petition to this court to review them must be dismissed. Section 313 of the Act provides that a party aggrieved by an order issued by the Commission may apply for a rehearing within thirty days after the order's issuance; and that, upon denial of such an application, the party may seek review of that order in the Court of Appeals. Concededly, the statute by its own terms, § 313(b), contains no requirement of finality: "Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals . . . ." Therefore all Commission orders would seem to fall within its purview. However, in the interest of discouraging repeated delays in administrative proceedings and the circumvention of the requirement of exhaustion of administrative remedies, the courts have declined review of interlocutory orders except where such an order is definitive in impact, and where judicial abstention would result in a party's irreparable injury. *Greene County Planning Bd. v. F. P. C.,* 455 F.2d 412, 425–26 (2d Cir.), *cert. denied,* 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972).

■ The orders here clearly do not meet the criteria for review. All that the Commission ordered on September 25 was the institution of an investigation into Niagara's alleged anticompetitive practices. It rejected Niagara's motion to dismiss that investigation for the stated reason that greater exploration of the factual underpinnings of Massena's allegations would be required before a final Commission decision could issue. No investigation has as yet commenced; the Commission has taken no evidence, and has made no findings. As the Supreme Court stated:

The statute [§ 313(b)] contemplates a case in which the Commission has taken evidence and made findings. . . . The provision for review thus relates to orders of a definite character dealing with the merits of a proceeding before the Commission and resulting from a hearing upon evidence and supported by findings appropriate to the case.

*F. P. C. v. Metropolitan Edison Co.,* 304 U.S. 375, 384, 58 S.Ct. 963, 967, 82 L.Ed. 1408 (1938). *See also Greene County Planning Bd. v. F. P. C.,* 490 F.2d 256 (2d Cir. 1973). In addition to the lack of any definitive administrative action such that would render these orders fit for judicial review, Niagara does not show that it would suffer any substantial hardship from the withholding of review at this time. The mere expense and inconvenience of a prospective administrative hearing do not, without more, constitute irreparable injury. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 51–52, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Thus, this would seem to be a case where "the issues raised could be disposed of in review of a final Commission order without serious detriment to the rights of the parties." *Greene County Planning Bd. v. F. P. C.,* 455 F.2d at 425.

■ Niagara argues, however, that the order instituting an investigation is in fact "final" under the standard articulated in *PepsiCo, Inc. v. F. T. C.,* 472 F.2d 179 (2d Cir. 1972), *cert. denied,* 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973), because the FPC has no jurisdiction over utilities' decisions to make or not to make agreements to wheel power and even if the Commission found that Niagara had engaged in discriminatory, anticompetitive practices it could not order Niagara to contract with Massena. In *PepsiCo* we were faced with the question, *inter alia,* of whether an FTC order denying plaintiff's motion to dismiss a complaint for failure of the Commission to join certain indispensable parties was an appealable order under § 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704. That section provides for an appeal of "final agency action for which there is no other adequate remedy in a court." In attempting to define which orders fell within that category, we stated that one can find such final agency action "if an agency refuses to dismiss a proceeding that is *plainly* beyond its jurisdiction as a matter of law or is being conducted in a manner that cannot result in a valid order." 472 F.2d at 187 [emphasis added].[3]

Niagara contends that the Commission's institution of the investigation was *plainly* beyond its jurisdiction and that the investigation could result in no "valid order" of the Commission other than a dismissal on the merits or one for lack of FPC jurisdiction. Here, it argues, the orders of the Commission constitute "final" agency action or action that is sufficiently definitive under *PepsiCo* to render judicial review appropriate at this time.

This finality argument is predicated on Niagara's contention that Massena has requested the investigation in the interest, ultimately, of securing a Commission order requiring Niagara to wheel power to the municipality. As the Supreme Court made clear in *Otter Tail Power Co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973), that the Commission has no such power under the Federal Power Act, it is Niagara's position that no valid Commission order could be entered at the conclusion of the investigation even if Niagara were found to have unlawfully discriminated.

The major flaw in this argument, however, is that the Commission has indicated no intention to compel wheeling, and an order directing Niagara to transmit power need not be the necessary outcome of a Commission investigation. The FPC is charged in § 206(a) of the Act with the

---

**3.** While *PepsiCo* dealt with § 10(c) of the Administrative Procedure Act, rather than § 313(b), its reasoning is nonetheless useful for our purposes. As we have broader powers of review under § 313(b) than are granted in § 10(c), one may argue that, *a fortiori,* we can review any type of action under the Federal Power Act that is reviewable under the Administrative Procedure Act.

responsibility for investigating, via a hearing had upon its own motion or upon complaint, whether rules, regulations or *practices* affecting rates filed with the Commission are "unjust, unreasonable, unduly discriminatory or preferential." That section, combined with § 201(b), 16 U.S.C. § 824(b), conferring jurisdiction on the Commission with respect to the sale of electric energy at wholesale in interstate commerce, and § 205, 16 U.S.C. § 824d(b), prohibiting discriminatory or preferential rates, establish a jurisdictional foundation for the agency's investigation of alleged anticompetitive behavior. As the Court recently stated in *F.P.C. v. Conway Corp.,* —— U.S. ——, ——, 96 S.Ct. 1999, 2004, 48 L.Ed.2d 626, (1976), quoting from *Gulf States Utilities Co. v. F.P.C.,* 411 U.S. 747, 758–59, 93 S.Ct. 1870, 1878, 36 L.Ed.2d 635 (1973):

> The exercise by the Commission of powers otherwise within its jurisdiction "clearly carries with it the responsibility to consider, in appropriate circumstances, the anticompetitive effects of regulated aspects of interstate utility operations pursuant to . . . directives contained in §§ 205, 206 . . . ."

*See also Northern Natural Gas Co. v. F.P.C.,* 130 U.S.App.D.C. 220, 399 F.2d 953, 958 (1968); *Indiana & Michigan Electric Co.,* 49 F.P.C. 1232 (1973).

The fact that the rate schedule filed by Niagara in Docket No. E–9379 was approved by the Commission as a just and reasonable rate, and the fact that the order instituting the investigation was thereafter entered, need not negate the Commission's investigative jurisdiction under § 206. That section speaks more broadly to the FPC's power to conduct an investigation into any practice affecting *any* rate or charge which is unjust or unduly discriminatory, and is not limited by its terms to rates filed subject to approval at the time the investigation is ordered. *See F.P.C. v. Sierra Pacific Power Co.,* 350 U.S. 348, 353, 76 S.Ct. 368, 100 L.Ed. 388 (1956).

Massena has alleged that in fact Niagara is engaging in discriminatory practices which affect rates within the Commission's jurisdiction by refusing to fully utilize its transmission lines, thereby lowering its revenues and creating higher rates for its jurisdictional customers, and by barring a competitor's entry into the electric utility industry. Consideration of these issues of anti-competitive practices by the Commission can "[serve] the important function of establishing a first line of defense against those [anti]competitive practices that might later be the subject of antitrust proceedings [in the federal district court]." *Gulf States Utilities Co., supra,* 411 U.S. at 760, 93 S.Ct. at 1878. And Commission Staff Counsel contend that a determination by the Commission that, due to the discriminatory practices Massena alleges, Niagara's rates are inordinately high will have a salutary, prospective effect on Niagara's future rate filings.

Thus, we conclude that even assuming *arguendo* that the Commission has no authority to compel the wheeling of power, there is an arguable jurisdictional basis for the Commission's ordered investigation so as to preclude a finding that it is *plainly* beyond its jurisdiction.

Having concluded that the appeal must be dismissed on the grounds stated in the Commission's first motion to dismiss, we need only say a brief word about its second asserted ground for dismissal, mootness. On April 8, 1976, the Commission dismissed the investigation it had ordered on July 23, 1975, and, forthwith, on April 8, moved in this court to dismiss the petition for review on the ground that this Commission dismissal had rendered a court review moot. However, Niagara had timely filed its petition for review on December 2, 1975, and the FPC had served its Certificate of Record in Lieu of Record on February 3, 1976. Under § 313 of the Act, pursuant to which Niagara's appeal was filed, all FPC jurisdiction regarding matters posed for review by this court terminates with the filing of the record. *See Alabama Power Co. v. F. P. C.,* 167 U.S.App.D.C. 145, 511 F.2d 383, 388 (1974). The order issued by the Commission subsequent to the filing of the Certificate of Record in this court thus had no effect

on the status of Niagara's petition before us.

The petition for review is dismissed.