**CITIES OF ANAHEIM AND RIVERSIDE, CALIFORNIA, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Southern California Edison Company, Intervenor.**

**No. 81–2141.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 25, 1982.

Decided Nov. 5, 1982.

774

Petition for Review of an Order of the Federal Energy Regulatory Commission.

Frances E. Francis with whom Marc R. Poirier, Washington, D.C., was on the brief for petitioners.

Kristina Nygaard, Asst. Gen. Counsel, F.E.R.C. with whom Jerome M. Feit, Sol., and Thajauna D. Miller, Atty., F.E.R.C., Washington, D.C., were on the brief, for respondent.

Jennifer Moran, Rosemead, Cal., for intervenor. William E. Marx, Rosemead, Cal., also entered an appearance for intervenor.

Before MIKVA and BORK, Circuit Judges, and JAMESON,* United States Senior District Judge for the District of Montana.

Opinion for the Court filed by Senior District Judge JAMESON.

Concurring opinion filed by Circuit Judge MIKVA.

* Sitting by designation pursuant to 28 U.S.C.

JAMESON, Senior District Judge:

Petitioners, Cities of Anaheim and Riverside, California (Cities), seek review of two orders of Respondent, Federal Energy Regulatory Commission (Commission), which Cities claim have effectively denied their right to compete for a license tò develop the Balsam Meadow Hydroelectric Project (Project) in central California. Petitioners are municipalities which operate electric systems. Respondent is authorized, *inter alia,* to issue permits and licenses for the construction and operation of hydroelectric generating facilities under the Federal Power Act. Intervenor, Southern California Edison Company (SCE), is an investor-owned electric utility, which serves customers, including Cities, in Southern California.

I. REGULATORY PROGRAM OF
FEDERAL POWER ACT

This appeal involves the interpretation of three sections of the Federal Power Act, 16 U.S.C. § 791a *et seq.* Section 5, 16 U.S.C. § 798, reads in part:

Each preliminary permit issued under this Part [16 U.S.C. §§ 792 *et seq.*] shall be *for the sole purpose of maintaining priority of application for a license* under the terms of this Act for such period or periods, not exceeding a total of three years, as in the discretion of the Commission may be necessary for making examinations and surveys, for preparing maps, plans, specifications, and estimates, and for making financial arrangements. Each such permit shall set forth the conditions under which priority shall be maintained.... (emphasis added.)

Section 6, 16 U.S.C. § 799, reads in part:

Licenses under this Part shall be issued for a period not exceeding fifty years. Each such license shall be conditioned upon acceptance by the licensee of all the terms and conditions of this Act and such further conditions, if any, as the Commission shall prescribe in conformity with

§ 294(d).

this Act which said terms and conditions and the acceptance thereof shall be expressed in said license. Licenses may be revoked only for the reasons and in the manner prescribed under the provisions of this Act and *may be altered or surrendered only upon mutual agreement between the licensee and the Commission* after thirty days' public notice. (emphasis added.)

Section 7(a), 16 U.S.C. § 800(a), reads in part:

(a) Preference. In issuing preliminary permits hereunder or licenses where no preliminary permit has been issued and in issuing licenses to new licensees under section 15 hereof [16 U.S.C. § 808] *the Commission shall give preference to applications therefor by States and municipalities,* provided the plans for the same are deemed by the Commission equally well adapted, or shall within a reasonable time to be fixed by the Commission be made equally well adapted to conserve and utilize in the public interest the water resources of the region; ... (emphasis added.)

## II. PROCEDURAL BACKGROUND

On September 14, 1978, Southern California Edison Company filed an application for a preliminary permit to study the proposed development of hydroelectric power at the Balsam Meadow site in Fresno County, California. The Balsam Meadow Project is located between two existing reservoirs— the Big Creek Project (No. 67) and the Shaver Lake Project. SCE is the licensee for both of these projects. On January 16, 1979, Cities filed a competing permit application for the Balsam Meadow Project.

By letter dated August 20, 1979, clarified by an order issued on October 22, 1979, the Commission gave Cities and SCE an opportunity to offer their comments as to how their projects were adapted to develop, conserve, and utilize, in the public interest, the water resources of the region. In a letter response dated November 19, 1979, SCE informed the Commission that its preliminary permit proposal was really an amend-

ment to its existing license for the adjacent Big Creek Project (No. 67). SCE requested the Commission to refrain from any decision on the two competing preliminary permit applications until February 29, 1980, when SCE proposed to submit (1) an amendment to its permit application recasting it as an application for preliminary permit to study an amendment to Project No. 67, and (2) an application for amendment to the Project No. 67 license.

On January 3, 1980, Cities requested the Commission to deny SCE's request and to proceed expeditiously to issue the permit to Cities on the basis of § 7(a). The Commission did not respond. On February 29, SCE filed applications to amend the license for Project No. 67 to include the Balsam Meadow development and for a preliminary permit to add this development to the Project No. 67 license, thus amending SCE's original application for the Balsam Meadow Project. On April 24, 1980, Cities filed motions to reject these filings and to expedite issuance of a permit in their favor.

On June 12, 1980, the Director of the Office of Electric Power Regulation (Director) notified SCE that its amended application was accepted as of February 29, 1980. Public notice of the Commission's acceptance of SCE's application for amendment was issued on August 22, 1980.

In the meantime Cities had renewed their rejection request in a motion to expedite filed on July 10, 1980. By letter dated September 11, 1980, the Director informed SCE, with a copy to counsel for Cities, that Cities' motion to reject the SCE application would be treated as a motion to dismiss and referred to the Commission, and that his staff would continue to process SCE's license application. On September 16, 1980, Cities filed a "Protest, Motion to Dismiss, Petition to Intervene, and Appeal from Staff Action." Cities filed an "Application for Rehearing" on November 14, 1980, contending that the Commission had failed to act within a reasonable time and to carry out its obligations under the Federal Power Act.

### III. Orders of the Commission

#### A. Order No. 1

On April 29, 1981, the Commission issued the first order on review (Order No. 1), holding, *inter alia,* that (1) the Balsam Meadow Project, if licensed to SCE, could be considered as an addition to Project No. 67, and therefore was properly included; (2) SCE could supersede its application for a preliminary permit with the filing of an application for amendment of an existing license; and (3) the Director properly exercised his authority in (a) accepting for filing the amendment to SCE's Project No. 67, and (b) in referring to the Commission Cities' motion to reject SCE's application for amendment of Project No. 67.

The order granted Cities' petition to intervene with respect to SCE's application for amendment of license No. 67 and denied the "motions to reject" filed by Cities on April 24 and July 10, the protest, motion to dismiss, and appeal from staff action filed September 16, 1980, and the application for rehearing filed by Cities on November 14, 1980. The order further provided, however, that in order to give Cities "an opportunity to compete on a more equal footing," Cities could within 30 days file a "notice of intent to file an application for license for the proposed Balsam Meadow development," and if timely notice were filed, could file the application within 150 days. SCE was given 30 days from the filing of an application by Cities to rebut the Cities' statement that Cities had equally well or better adapted plans and to provide a counter-statement of how its plans are better adapted to conserve and utilize in the public interest the water resources of the region.

#### B. Order No. 2

On May 26, 1981, Cities filed (1) an application for rehearing of the April 29 order; (2) a petition for declaratory order, motion for clarification, and motion for extention of time in which to file a license application; and (3) a notice of intent to file a competing application. In the application for rehearing Cities contended, *inter alia,* that they were denied a comparative proceeding to which they were entitled under § 7(a); challenged the Commission's interpretation of § 6, arguing that SCE had already given the consent necessary; and challenged the Commission's rejection of their appeal from staff action as unreasonable, arbitrary and capricious.

On September 10, 1981, the Commission issued the second order on review (Order No. 2), denying Cities application for rehearing. This order clarified Order No. 1 with respect to the standard the Commission would apply to a comparative proceeding between applicants for license and preliminary permit. The Commission held that Cities must file a license application at the current stage of the proceedings and could not defer their application until after a non-municipal license application had been processed and found to be best adapted. The Commission reaffirmed its holding that the Director was authorized to accept SCE's application for amendment for processing, and expressly ruled that the license conditions in SCE's Project No. 67 did not constitute the consent the Commission deemed § 6 required to permit another applicant to propose a development if SCE objected. On September 10, 1981, the Commission also tolled the 150 day filing deadline for Cities' license application.

On March 3, 1982 (after the petition for review and petitioners' opening brief had been filed), the Commission issued an order granting in part and denying in part Cities' petition for a declaratory order and motion for clarification. Noting that by reason of the Commission's tolling of the filing deadline, the Cities had the benefit of five months beyond the original 150 day deadline, the order reinstated the 150 day deadline, requiring the Cities to file their competing application within 17 days of the issuance of the order.

### IV. Contentions of Parties

Petitioners contend that (1) the Commission's orders are contrary to § 7(a) of the Federal Power Act and effectively invalidate the Congressional intent to grant a

preference to municipalities; (2) the Commission's interpretation of § 6 is erroneous, deprives Cities of their rights, and is detrimental to the public interest; (3) even if the Commission's interpretation is correct, SCE has consented to the Cities' processing permit and license applications; and (4) the Commission, Director, and staff have acted in an arbitrary and capricious manner and have violated the Administrative Procedure Act and Cities right to due process.

Respondent and Intervenor contend that (1) the appeal should be dismissed because it is based upon issues not yet ripe for judicial review, i.e., upon Commission decisions which are interlocutory and not yet final, involving fundamental questions which have not yet been definitely resolved by the Commission; and (2) alternatively, the Commission's orders should be affirmed.

## V. Ripeness for Review

We address first the questions of whether the Commission's orders are ripe for review. Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), states in part: "Any party to a proceeding under this Act aggrieved by an order issued by the Commission in such proceeding may obtain review of such order in the United States Court of Appeals . . . for the District of Columbia . . . ." The requirements for review under this section were summarized by this court in *Papago Tribal Utility Authority v. FERC,* 628 F.2d 235, 239 (D.C.Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980):

> [T]he reviewability of an order must . . . be determined by reference to its practical function and consequences in the relevant statutory scheme. We must ask first whether the order is final; second whether, if unreviewed, it would inflict

irreparable injury on the party seeking review; and third whether judicial review at this stage of the administrative process would invade the province reserved to the discretion of the agency.[1]

The court noted in *Papago* that "The courts have long held . . . that review under Section 313(b) is limited to orders of definitive impact, where judicial abstention would result in irreparable injury to a party." *Id.* at 238.[2] The Supreme Court in *FPC v. Metropolitan Edison Co.,* 304 U.S. 375, 384, 58 S.Ct. 963, 967, 82 L.Ed. 1408 (1938), held that "The provision for review thus relates to orders of a definitive character dealing with the merits of a proceeding before the Commission and resulting from a hearing upon evidence and supported by findings appropriate to the case."[3]

### A. *Finality*

■ "The test of finality for purposes of review is . . . whether [the order] imposes an obligation or denies a right with consequences sufficient to warrant review." *Environmental Defense Fund v. Ruckelshaus,* 439 F.2d 584, 589, n. 8 (D.C.Cir.1971). "An agency's procedural . . . rulings do not constitute a final order justifying judicial review except in extreme instances where the action is held to constitute an effective deprivation of appellant's rights . . . . The denial of interlocutory appeals goes on the assumption that appeals from final orders are realistic and effective." *Thermal Ecology Must Be Preserved v. Atomic Energy Commission,* 433 F.2d 524, 526 (D.C.Cir. 1970).

Cities argue that the orders here meet the test of finality and are reviewable because (1) the Commission has effectively denied Cities a preliminary permit proceed-

1. See also *Delmarva Power & Light v. FERC,* 671 F.2d 587 (D.C.Cir.1982). *Papago* and *Delmarva* both involved a challenge to a Commission decision accepting a rate filing by an electric power wholesaler claimed to be "patently invalid". The court concluded in each case that the acceptance by the Commission of the filing was nonreviewable.

2. See also *General Motors Corp. v. FERC,* 607 F.2d 330 (10 Cir.1979); *Niagara Mohawk Power Corp. v. FPC,* 538 F.2d 966, 969 (2 Cir.1976).

3. In *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), the Court held that a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."

ing and imposed an obligation upon Cities to file an application for a competing license project; (2) Cities are unable to file a competing license application by the date required; (3) the Commission in effect has taken a final position that no comparative proceeding will be held; and (4) the Commission's determination that pursuant to § 6, SCE's consent is required before Cities may substantially alter SCE's existing license projects is intended to be conclusive and is a final order.

We agree with the Commission that the orders were procedural and did not determine substantive rights, i.e., did not "[impose] an obligation or [deny] a right with consequences sufficient to warrant a review." The acceptance of SCE's amended license application merely initiated the investigative process by which the Commission will ultimately determine if and to whom a license for the Balsam Meadow Project should be awarded. The Commission is still required to determine if Cities' application is equally well adapted or can be within a reasonable time made equally well adapted "to conserve and utilize in the public interest the water resources of the region ...", § 7(a), 16 U.S.C. § 800(a).

■ Even if the Commission should decide to issue a license for the Balsam Meadow Project to SCE and the decision that the project could be licensed as an amendment to an existing license is in fact legal error, Cities will have full opportunity to seek judicial review of that final administrative action. As this court said in *Thermal Ecology, supra:*

> If the Commission should grant the license, and it is later determined that this reflected legal error ... that would be ground for vacating the order and remanding for de novo consideration

.... [T]he availability of relief from the final order granting a certificate is sufficient to preclude the ruling denying admission of evidence from being considered a final order.

433 F.2d at 525–526. Similarly, here, mere possibility of such an error does not justify immediate judicial review.

The Commission's decision that if Cities wish to compete against SCE's license application with a license application of their own, such an application must be filed now, is not yet ripe for review. Cities could choose to file a timely application for license or to continue to rely upon their preliminary permit application in the competition with SCE for the project. In either event, the Commission must still closely examine all of the submissions, weigh the benefits of each, and make the award which best serves the public interest. Again, "the availability of relief from the final order ... is sufficient to preclude the ruling ... from being considered a final order." *Thermal Ecology, supra.*

■ The Commission's express reservation of any decision on the question whether licensing the development to the Cities would require a substantial alteration of the license for Project No. 67 requiring SCE's "agreement" is not immediately reviewable because nothing final has been decided.[4] See *Midwestern Gas Transmission Co. v. FERC,* 589 F.2d 603 (D.C.Cir. 1978).[5]

B. *Irreparable Injury*

■ Cities argue that the Commission has erroneously imposed upon Cities an obligation to file a license application which would subject them to "inordinate risks and

---

4. As the Commission notes, its statement regarding the requirement of Section 6 of the Act, 16 U.S.C. § 799, *supra,* simply tracks the language of the Act and does not constitute a final determination of the effect of any application which might be filed by Cities.

5. In *Midwestern, supra* at 621, this court held: "We do not reach the issue of mutual exclusivi-

ty at this time because FERC has not made a final decision on Northwest's import applications, nor has it foreclosed the possibility of future hearing on the issue of competition or mutual exclusivity.... Of course, our present decision will not preclude judicial review if a future decision by the Commission should foreclose an effective competitive hearing."

costs,"[6] and failure to review at this time would accordingly "create serious hardship." Neither the claim that the administrative orders are erroneous nor the possible monetary loss from filing a license application constitute irreparable harm sufficient for this court to inject itself and interrupt the administrative proceedings. In *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 51–52, 58 S.Ct. 459, 464, 82 L.Ed. 638 (1938), the Supreme Court stated:

> Obviously, the rule requiring the exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact. [footnote omitted][7]

Nor is prospective monetary loss, while it may be injurious, in itself an irreparable harm sufficient to require review of the orders at this time. The money that Cities will lose, if in fact they do lose money, will be due to the costs of competing with SCE for the Balsam Meadow Project. Such competition expenses are analogous to litigation expenses. The Supreme Court has held that "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *FTC v. Standard Oil Co. of California,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980), *quoting Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974).

■ As this court recognized in *Papago, supra,* "Only when parties face the prospect of irreparable injury, with no practical means of procuring effective relief after the close of the proceeding, might they be entitled to immediate review of a nonfinal order." 628 F.2d at 240. Here the Cities will be able to raise the same issues following the entry of a final order on the license application.

## C. Invasion of the Province of the Administrative Agency

The prudential doctrine of judicial restraint was enunciated in *Abbott Laboratories v. Gardner, supra,* 387 U.S. at 148–149, 87 S.Ct. at 1515:

> Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. [footnote omitted.]

■ As noted in *Papago,* "a nonfinal administrative order may be unreviewable—even though it might result in serious irreparable injury to a party—if immediate judicial review would undermine the authority of the agency acting within the scope of its discretion." 628 F.2d at 243. Both *Papago, Id.* at 240, and *Delmarva,* 671 F.2d at 594, emphasize the importance of avoiding judicial review of "piecemeal proceedings" and having "one comprehensive judicial review proceeding, based on a full record."[8]

---

6. Cities argue that their right to municipal preference vested upon the filing of their permit application and their failure to file a competing license application should in no way affect their entitlement to a preliminary permit.

7. In *Myers,* petitioner contended that a hearing by the National Labor Relations Board which the Board was not authorized to hold would subject petitioner to irreparable injury, and rights guaranteed by the Constitution would be denied unless the district court had jurisdiction to enjoin the hearing. The Court rejected this argument.

8. While immediate determination of the issues raised by Cities might save some time, we cannot say that the Commission has been dilatory in resolving rather complicated procedural questions. The procedural questions raised by Cities have, of course, resulted in delaying final determination on the merits.

Nor has the "agreement" issue with respect to the interpretation of § 6 been finally resolved. It is true that the Commission rejected Cities' argument that certain provisions of the Project 67 license constitute a consent to alterations in the license; but this does not dispose of the question of whether in fact a competing license application proposed a plan requiring a substantial alteration in SCE's license. A piecemeal resolution of this issue is not required.

The Commission's decisions are procedural and do not constitute a final decision on the merits of the controversy between Cities and SCE. Whatever the outcome of the licensing proceedings, any aggrieved party will have the right to seek judicial review on the entire record. Review by the court now would invade the province of the administrative agency.

We conclude that the orders are not ripe for review and dismiss the petition.[9]

MIKVA, Circuit Judge, concurring:

I agree with the majority that those portions of the Commission's orders discussing section 6 of the Federal Power Act, 16 U.S.C. § 799 (1976), are not ripe for review. In those discussions, the Commission expressly reserved decision on whether substantial alterations to licenses presently held by Southern California Edison Company (SCE), and thus consent from SCE, would be necessitated by any license application that might be submitted by the Cities of Anaheim and Riverside (Cities). The court should neither review potential decisions of the Commission nor comment upon discussions by the Commission that are plainly dicta.

But I cannot agree that those portions of the Commission's orders allowing SCE to withdraw its application for a preliminary permit are also nonreviewable. Preliminary permits are an integral stage of the licensing process envisioned by Congress;

just as Commission decisions denying preliminary permits are reviewable, so must Commission decisions that preempt this stage be subject to immediate review by the courts. I concur with the ultimate result reached by the majority because the Commission's actions at issue here, while ripe for review, were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1976).

## I. REVIEWABILITY

To regulate the development of hydroelectric power, Congress directed the Commission to issue licenses for the construction and maintenance of necessary facilities. 16 U.S.C. § 797(e) (1976). Because an applicant must provide the Commission with a plethora of information before a license will be issued, see id. § 802, Congress also allowed the Commission to issue preliminary permits "for the purpose of enabling applicants for a license ... to secure the data and to perform the acts required by section 802," id. § 797(f). Such preliminary permits, not to exceed three years in duration, also provide the permit holder with a statutory "priority" in its application for a license. Id. § 798.

These statutory purposes served by preliminary permits are far from insignificant. The grant of a preliminary permit, accompanied by a statutory priority for the eventual award of a license, ensures that the permit holder will be awarded the license in any case in which the Commission determines that the permit holder's license application is "at least as well adapted" as those submitted by its competitors. 18 C.F.R. § 4.33(h)(1) (1981). If the Commission decides that other license applications are better adapted, the permit holder will be so informed, and will be given a reasonable time in which to amend its license application so as to render it of equal quality with

---

9. Having concluded that the orders of the Commission are not ripe for review, we do not reach the merits of the decision allowing SCE to withhold its preliminary permit application and re-apply to amend its existing license. If we had concluded that this decision is ripe for review, we would agree with Judge Mikva that it is not arbitrary, capricious, or an abuse of discretion.

those of its competitors. *Id.* § 4.33(h)(2). If the permit holder is subsequently successful in upgrading its application, it will be awarded the license. *Id.* Moreover, the priority for a license that attaches to the preliminary permit also overcomes other preferences that Congress included in the statute. For example, although Congress mandated that states and municipalities must be given preference when the Commission issues permits or licenses, 16 U.S.C. § 800(a) (1976), that preference does not hold when the Commission is issuing a license in a case in which a preliminary permit already has been awarded. In this latter situation, the permit holder, even if a private utility competing with a state or municipality, retains its statutory priority. *Id.; see Washington Public Power Supply System v. FPC,* 358 F.2d 840, 847 (D.C.Cir. 1966), *rev'd and vacated on other grounds sub nom. Udall v. FPC,* 387 U.S. 428, 87 S.Ct. 1712, 18 L.Ed.2d 869 (1967).

Thus, obtaining a preliminary permit ensures that the applicant's eventual license application will be favored by the Commission. This, in turn, allows the applicant to undertake those expenditures foreseen by section 802, and required by Commission regulations, *see, e.g.,* 18 C.F.R. §§ 4.40–.41, 4.50–.51 (1981), with the knowledge that its resulting license application will receive a priority during final consideration. Those competing applicants not awarded preliminary permits may make the same expenditures, but obviously must do so with a greater risk that their investments will be for naught.

It is presumably for these reasons that the grant of a preliminary permit to one applicant, and its denial to one or more competing applicants, consistently has been subject to immediate review by the courts of appeals. *See, e.g., City of Dothan v. FERC,* 684 F.2d 159 (D.C.Cir.1982); *Delaware River Basin Commission v. FERC,* 680 F.2d 16 (3d Cir. 1982). The question raised by the present case is somewhat, but not substantially, different—whether a Commission order allowing a private utility to preempt unilaterally the permit stage, by withdrawing its application for a preliminary permit and seeking instead to amend an existing license, should be subject to similar review by the courts. Because such a Commission decision directly affects the existence of statutory preferences and priorities at the eventual license proceeding, and therefore affects the risks assumed by competing applicants, I believe this question must be answered in the affirmative.

Review of Commission orders is governed by section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b) (1976), allowing aggrieved parties to obtain review of those decisions in the various courts of appeals. That provision clearly allows for review of final agency actions. *See Papago Tribal Utility Authority v. FERC,* 628 F.2d 235, 238–40 (D.C.Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980). Although the "quintessential reviewable order" under the statute is a final license determination by the Commission after a full hearing on the merits, "the reviewability of an order ... must be determined by reference to its practical function and consequences in the relevant statutory scheme," *id.* at 239; *see also Delmarva Power & Light Co. v. FERC,* 671 F.2d 587, 592 (D.C.Cir.1982). In the situation presented by Cities' petition for review, such a pragmatic approach requires that the court review the Commission order in dispute.

Specifically, a decision by the Commission to bypass the granting of a preliminary permit, once the permit stage has been commenced and competing applications for permits have been filed, is little different from a Commission order granting or denying a preliminary permit.[1] Like the latter deci-

---

1. The statute also allows an applicant to apply directly for a license, *see* 16 U.S.C. §§ 797(e), 800(a) (1976), completely ignoring the preliminary permit stage. The use of such a procedure, however, is easily distinguishable from the process followed in this case. The Commission in such a case decides only to accept the license application for filing, a decision that is clearly nonreviewable. *Cf. Papago,* 628 F.2d at 247 (Commission acceptance of rate filing is nonreviewable).

sion, an order circumventing the permit stage in the circumstances presented here affects the statutory preferences and priorities to be applied at the licensing stage. In most cases, a decision by the Commission not to award a preliminary permit to either party effectively will deny the petitioning party a statutory priority that it otherwise would receive. In practice, this has the same effect as the outright denial of a preliminary permit, a denial that immediately is reviewable as final agency action. The majority is exalting form over substance, therefore, when it decides that the orders in this case are non-final and not yet ripe for review.

Nor does the review that should be accorded in this case draw the court into disputes properly within the province reserved to the discretion of the agency. Presented for review are purely legal issues of statutory construction that involve no factual disputes—i.e., the issues will not be resolved or clarified by a full hearing on the merits before the Commission. Thus, the issues are fit for review at this early stage of the proceedings. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Indeed, waiting for a decision from the Commission on competing license applications, and then reversing because of legal errors at the preliminary permit stage, merely would waste administrative resources. It is true that the Commission's ultimate licensing decision, if it granted the license to Cities, might moot the issues now presented for review. But potential mootness, needless to say, is not the same as lack of ripeness.

Thus, the Commission orders at issue here, to the extent that they allowed SCE to withdraw its initial application for a preliminary permit, and therefore preempted Cities' competing application for a preliminary permit, should be subject to immediate review by this court.

## II. CITIES' CHALLENGE TO THE COMMISSION'S ORDERS

Cities argue that the Commission decision allowing SCE to withdraw its preliminary permit application and re-apply to amend its existing license is contrary to section 7(a) of the Federal Power Act, 16 U.S.C. § 800(a) (1976). That section grants a preference to states and municipalities when they compete against other parties either for preliminary permits or for licenses where no preliminary permit has been issued. As interpreted by Cities, this provision would allow states and municipalities to lock-in their statutory preference at the preliminary permit stage. But that position ignores the public interest goals of the Federal Power Act, which plainly require that the Commission always select the best applications. The statutory preference for states and municipalities is no more than a tie-breaker, to be applied by the Commission only when competing plans are deemed to be "equally well adapted." *Id.; see Alabama Power Co. v. FERC,* 685 F.2d 1311 at 1314 (11th Cir.1982). Therefore, it is proper for the Commission either to favor more fully developed license applications over preliminary permit applications or, as here, to require a state or municipality to compete at the license stage when a competitor has reached that level. At each stage, the statutory preference to which Cities are entitled is still effective: Cities will win if their application is equal to, or better than, the application submitted by SCE. Thus, the decision by the Commission was in accordance with statutory requirements, and should be affirmed.[2]

2. A different case might be presented if the Commission, though acting within its statutory authority, acted in an arbitrary and capricious manner. But the Commission in this case clearly articulated rational reasons for its decisions, *see* Joint Appendix at 23–31, 97–104, thereby negating any claim that the decisions were arbitrarily or capriciously made.