701 F.2d 266
 BOROUGHS OF ELLWOOD CITY, GROVE CITY, NEW WILMINGTON, WAMPUM
AND ZELIENOPLE, PENNSYLVANIA, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Pennsylvania Power Company, Intervenor.
 No. 82-3189.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 24, 1983.
Decided March 4, 1983.
 
 Charles F. Wheatley (argued), Woodrow D. Wollesen, William Steven Paleos and Michael J. Thompson, Wheatley & Wollesen, Washington, D.C., for petitioners.
 Charles A. Moore, Gen. Counsel, Jerome M. Feit, Sol., Joshua Z. Rokach (argued), F.E.R.C., Washington, D.C., for respondent.
 Steven A. Berger (argued), Lawrence I. Fox, Berger, Steingut, Weiner, Fox & Stern, New York City, for intervenor; James R. Edgerly, Stephen L. Feld, New Castle, Pennsylvania Power Co., of counsel.
 Before ADAMS, GARTH and BECKER, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 In this proceeding, wholesale customers of the Pennsylvania Power Company (PPC), an electric utility, filed a petition challenging an order of the Federal Energy Regulatory Commission (FERC or Commission), which set the length of time that a proposed schedule of increased wholesale electric rates would be suspended. We hold that, under the circumstances of this case, the action of the FERC in suspending the rate increase for one day, the minimum period provided for by statute, rather than for some longer period up to the statutory maximum of five months, is not subject to review. Accordingly, we dismiss the petition.
 
 I.
 
 2
 The Federal Power Act limits the rates charged by public utilities for the sale and transmission of electricity in those cases in which the transactions are subject to the jurisdiction of the Commission.[1] Such rates are required to be just and reasonable. 16 U.S.C. Sec. 824d(a) (1976). Public utilities must, therefore, file with the FERC "schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission," and give notice to the FERC and the public of any proposed changes. 16 U.S.C. Sec. 824d(c) and (d) (1976 & Supp. V 1981). After an initial review, the Commission may accept the filed rates, suspend the new rates for any period between one day and five months, or reject the new rates altogether. 16 U.S.C. Sec. 824d(d) and (e) (1976 & Supp. V 1981).[2] If the FERC suspends the new rates, and does not determine before the end of the suspension period whether the new rates are justified, it may require the utility to keep an accurate account of all amounts received by reason of the increased rates. If the FERC subsequently determines that the increased rates were not just and reasonable, it may order a refund, with interest, to the persons in whose behalf such amounts were paid, of that portion of the increased charges found not justified. 16 U.S.C. Sec. 824d(e) (1976). By suspending the new rates, even for the minimum period of a single day, the Commission is thus able to provide customers with a significant level of protection. The difference between the amount that would have been collected under the new rate schedule and that actually collected under the old rate schedule during the period of suspension is not, on the other hand, subject to recapture even if the Commission later determines that the rates proposed by the utility were, in fact, just and reasonable.
 
 II.
 
 3
 On October 7, 1981, PPC filed a proposed two-step increase in its rates for electric service to five municipal, wholesale customers located in Western Pennsylvania: Ellwood City, Grove City, New Wilmington, Wampum and Zelienople (the Boroughs). PPC projected that the first stage of the increase, Level A, would generate an additional $1,671,950 over current income for this type of service--a 40.1% increase. It requested that the Level A rates go into effect on the same day that its retail rate increase would be implemented. The Level B increase, $652,870, was to become effective only after it was found to be justified on the basis of an Initial Decision on the merits by the FERC.[3] On November 9, 1981, the Boroughs petitioned the FERC for permission to intervene before the FERC and moved to reject PPC's filing as discriminatory and anticompetitive. The Boroughs alleged that the proposed rate increase created a price squeeze designed to drive them out of the retail electricity business.[4] In an order dated January 21, 1982, the Commission granted the petition to intervene, refused to require PPC to file additional information, and suspended the effective dates for the minimum suspension period of one day. This meant that the proposed rates would go into effect, but if FERC ultimately found they were too high, the utility would be required to refund the increased portion to its customers, with interest.
 
 
 4
 The Boroughs contend that the FERC unlawfully refused to consider the potential anticompetitive effects of the alleged price squeeze in setting the length of the suspension period. They argue further that the Commission erred in failing adequately to explain its decision to depart from its normal policy of suspending rates for the maximum period allowed by statute. The FERC insists that it both considered the allegations of potential anticompetitive effects and provided an adequate explanation for its action,[5] but that in any event its decision is not reviewable.III.
 
 
 5
 Whether a court of appeals may review a decision of the FERC setting the length of a new rate suspension period has not previously been addressed in this Circuit. The seminal case on this issue is Arrow Transportation Co. v. Southern R. Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963), which construed the nearly identical suspension provisions of the Interstate Commerce Act. In Arrow the Interstate Commerce Commission (ICC) suspended a set of proposed railroad rates for the maximum period provided for in the statute, but had not yet decided the reasonableness of the new rates by the time the suspension period expired. Suit was then filed by a barge line in competition with the railroad, a municipality, and a consumer who received goods by truck, to enjoin the railroad from implementing the proposed rate reductions pending a decision on the merits by the ICC. The Supreme Court held that the courts could not interfere with the suspension power through the use of an injunction, explaining that the Interstate Commerce Act gave the agency "the sole and exclusive power to suspend," and foreclosed "judicial power to interfere with the timing of rate changes." Arrow Transportation Co. v. Southern R. Co., 372 U.S. at 668, 83 S.Ct. at 989.[6] See also Burlington Northern, Inc. v. United States, --- U.S. ----, 103 S.Ct. 514, 519, 74 L.Ed.2d 311 (1982); Consolidated Rail Corp. v. Nat'l Ass'n of Recycling Industries, Inc., 449 U.S. 609, 612, 101 S.Ct. 775, 777, 66 L.Ed.2d 776 (1981) (per curiam); Southern R. Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 454, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979); Atchison, T. & S.F.R. Co. v. Wichita Board of Trade, 412 U.S. 800, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973); United States v. SCRAP, 412 U.S. 669, 697, 93 S.Ct. 2405, 2421, 37 L.Ed.2d 254 (1973).
 
 
 6
 Judge Leventhal, relying on Arrow, concluded, in Municipal Light Boards v. FPC, 450 F.2d 1341 (D.C.Cir.1971), that a one-day suspension order under the Federal Power Act "is not subject to judicial review, either as to the granting of the one day suspension or the denial of a five month suspension...." 450 F.2d at 1352. The court explicitly confined its holding, however, to situations in which the agency neither acted in defiance of a "clear and mandatory" statutory provision, nor committed error evident on the face of the papers. Id. at 1352. In a later case, Connecticut Light & Power Co. v. FERC, 627 F.2d 467 (D.C.Cir.1980), the Court of Appeals for the District of Columbia Circuit held that it did, in fact, have jurisdiction to review an order of the FERC setting the length of a suspension period where the agency acted in defiance of a clear and mandatory provision of the Federal Power Act. The FERC, in Conn. Light & Power, suspended a new rate for the maximum period stipulated in the statute. As required by the statute, the Commission provided the utility with a statement giving its reasons for the suspension. The court found, however, that because the order employed mere "boilerplate" language it did not constitute an adequate statement of reasons. FERC thus violated section 205(e) of the Federal Power Act, 16 U.S.C. Sec. 824d(e) (1976), which provides in relevant part:
 
 
 7
 [T]he Commission, upon filing with such schedules and delivering to the public utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; ....
 
 
 8
 [Emphasis added.]
 
 
 9
 The Boroughs argue that they must be accorded similar protection. Nothing in section 824d(e), however, clearly commands the FERC to supply "a statement in writing of its reasons for such suspension" to the customers of the utility. Nor is it the case that the customers and the utility are in such analogous positions that it would be inequitable to treat them differently. As the court noted in Conn. Light & Power, a regulated utility can alter its conduct in order to influence the agency's decision to lengthen or shorten a new rate suspension period; its customers have no similar option. More critically, while the customers are protected against excessive charges by the refund provision, the utility is unable to recapture amounts not collected during the period in which the new rates are suspended. The reasoning in Conn. Light & Power is thus inapplicable to a situation in which it is the customers and not the utility that claim that they were not supplied with adequate reasons.[7]
 
 IV.
 
 10
 Even assuming that the reasoning in Arrow and Municipal Light Boards is not controlling in the present context, the order complained of here is unreviewable. The relevant section of the Federal Power Act, Sec. 313(b), 16 U.S.C. Sec. 825l (b), provides:
 
 
 11
 Any party to a proceeding under this Act aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business....
 
 
 12
 While the language of the statute itself does not limit judicial review to consideration of final orders, the Supreme Court held almost forty-five years ago that 313(b) does not apply to "mere procedural requirements or interlocutory directions." FPC v. Metropolitan Edison Co., 304 U.S. 375, 384, 58 S.Ct. 963, 967, 82 L.Ed. 1408 (1938). "The provision for review thus relates to orders of a definitive character dealing with the merits of a proceeding before the Commission and resulting from a hearing upon evidence and supported by findings appropriate to the case." Id. The final order rule acts as a limit on judicial intrusion in the administrative process. If the courts were to review preliminary agency determinations that are not definitive in impact, they would run the risk of creating delay and disruption.
 
 
 13
 Indeed, the courts would soon find themselves in the position of having to ascertain whether the challenged rates are just and reasonable even before the Commission has discharged that function. In an analogous context, the Supreme Court has recently said:
 
 
 14
 By entering an order declaring that the San Antonio I rate order was "revived" for the period June 1980--May 1981, the Court of Appeals did that which we have said a federal court may not do: i.e., freeze the rate that railroads charge shippers prior to a decision by the Commission as to what a reasonable rate should be.
 
 
 15
 Burlington Northern, Inc. v. United States, 103 S.Ct. at 521.
 
 
 16
 The Boroughs, without challenging the foregoing propositions, and relying on Papago Tribal Utility Auth. v. FERC, 628 F.2d 235, 239 (D.C.Cir.1980), cert. denied 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980), argue that the test of reviewability is pragmatic and considers not only whether the order disposes on the merits of all significant disputed issues in the case and the degree to which "judicial review at this stage of the administrative process would invade the province reserved to the discretion of the agency," but also whether the order would inflict irreparable harm on the party seeking review. Papago Tribal Utility Auth. v. FERC, 628 F.2d at 239; see also Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 425, 62 S.Ct. 1194, 1204, 86 L.Ed. 1563 (1942). We take up each of these matters in turn.
 
 
 17
 A determination of the length of the suspension period does not decide finally any of the disputed issues in the case, except the right of the utility to collect the higher rates during the period of the suspension. The order, in fact, obligates the utility to refund to customers those amounts, plus interest, which the Commission subsequently determines to be in excess of the justified rates. In Papago, the Court of Appeals for the District of Columbia Circuit characterized a decision by the FERC to suspend rather than reject a rate filing as "undeniably interlocutory," explaining that "it merely reserves the issues pending a hearing." 628 F.2d at 240. The order at issue here, deciding only the length of the suspension period, is even more clearly interlocutory. Judicial review of the length of the suspension period may constitute a particularly disruptive encroachment on the administrative process. The FERC handles substantial numbers of rate cases every year. The Commission bases its preliminary decisions, such as whether and for how long to suspend new rates, on necessarily limited information. Preliminary decisions are designed to give the FERC an opportunity to investigate before it renders its ultimate determination on the justifiability of the rates in a way that minimizes the unfairness to the parties. Congress has indicated that the FERC is to be given the widest possible latitude in the exercise of its discretion at this early stage in the proceedings, Conn. Light & Power v. FERC, 627 F.2d at 472.[8]
 
 
 18
 Finally, the Boroughs assert generally that they will suffer irreparable injury if the Commission's order setting the length of the suspension period is permitted to stand. We expressly do not decide whether the irreparable injury is properly considered in determining the reviewability of a suspension order, because nothing in the record shows or even suggests that the Boroughs will be irreparably harmed as a result of the increase from the old to the new rates during the five month period for which the new rates could have been suspended, given that any overpayment will be subject to refund with interest. The mere allegation that the Boroughs may lose business does not suffice to demonstrate irreparable injury.[9]
 
 V.
 
 19
 Since the order of the FERC suspending the rates filed by PPC was an interlocutory order not subject to review in the circumstances present here, the petition of the Boroughs will be dismissed.
 
 
 
 [1]
 The Federal Power Act was administered by the Federal Power Commission (FPC) until that agency ceased to exist on October 1, 1977. On that date, all functions of the FPC under the Act were transferred to the FERC. 42 U.S.C. Sec. 7172 (Supp. III 1979)
 
 
 [2]
 While the Federal Power Act does not explicitly provide for rejection of the proposed rate schedule, judicial precedent permits it, at the Commission's discretion, under the proper circumstances. Papago Tribal Utility Authority v. FERC, 628 F.2d 235, 241 (D.C.Cir.1980); Municipal Light Boards v. FPC, 450 F.2d 1341, 1346 (D.C.Cir.1971)
 
 
 [3]
 The stated purpose of bifurcating the rate increase was to reduce the utility's potential liability for refund in case the Commission determined that the increase was not just. App. at 4
 
 
 [4]
 "Price squeeze" is defined as a situation in which a wholesale supplier also selling at the retail level charges discriminatorily high rates to a wholesale customer to prevent competition by that customer at retail. Cities of Batavia v. FERC, 672 F.2d 64, 86 n. 51, 88-91 (D.C.Cir.1982)
 The Boroughs maintain that the alleged price squeeze complained of in this proceeding is merely the latest in a series of anticompetitive actions taken by PPC. In support of their contentions, they cite a 1975 FPC decision, Pennsylvania Power Co., 54 F.P.C. 727 (1975), and the decision by an administrative law judge in Pennsylvania Power Co., Initial Decision, 13 F.E.R.C. (CCH) p 63,008. In the former, an A.L.J., after noting that both sides had been uncooperative and intransigent on the issue of high voltage discount rates, ordered PPC to file revised rates within forty-five days of notification that any of its municipal customers was or would be able to accept transmission voltages of 15,000 volts or more. 54 F.P.C. at 735-736. In the latter, an A.L.J. found that during an eleven and one-half month period (September 1977-August 1978) a price squeeze did exist. This decision was reversed by the Commission in an order dated December 21, 1982.
 
 
 [5]
 The Commission's explanation of its decision is given at Pennsylvania Power Company, FERC Docket No. ER81-779-000, (January 21, 1982), 3-4:
 Our analysis indicates the Penn Power's proposed rates have not been shown to be just and reasonable and that they may be unjust, unreasonable, unduly discriminatory or preferential, or otherwise unlawful. Accordingly, we shall accept the rates for filing and suspend them as ordered below.
 In a number of suspension orders,[5] we have addressed the considerations underlying the Commission's policy regarding rate suspensions. For the reasons given there, we have concluded that rate filings should generally be suspended for the maximum period permitted by statute where preliminary study leads the Commission to believe that the filing may be unjust and unreasonable or that it may run afoul of other statutory standards. We have acknowledged, however, that shorter suspension may be warranted in circumstances where suspension for the maximum period may lead to harsh and inequitable results. Such circumstances are presented here.
 While the intervenors have raised issues warranting further inquiry at hearing, preliminary review of the filing suggests that Penn Power's Level A rates may not produce excessive revenues. The company has agreed to collect these rates subject to refund and has proposed to collect the Level B rates only after a hearing. Accordingly, we shall suspend the Level A rates for one day, to become effective on January 24, 1982, subject to refund. In accordance with Penn Power's request, the Level B rates will be set for hearing along with the Level A rates, with the rates found by an Initial Decision in this proceeding to be just and reasonable to become effective from the date of such Initial Decision, subject to refund pending final Commission order.
 We shall deny the Boroughs' request not to phase the price squeeze issue and, in accordance with the Commission's policy established in Arkansas Power and Light Company, Docket No. ER79-339 (August 6, 1979), we shall phase the proceeding so that the matter of price squeeze may be considered following a determination of the otherwise just and reasonable rates. As we have previously noted, we believe that the proper rates to be analyzed for purpose of cost-revenue price squeeze comparisons are those rates which would be considered just and reasonable in the absence of a price squeeze. Thus, it is necessary for a decision first to be reached on the cost of service, capitalization, and rate of return issues.[6]
 
 
 [5]
 E.g., Boston Edison Co., Docket No. ER80-508 (August 29, 1980) (five month suspension); Alabama Power Co., Docket Nos. ER80-5-6, et al. (August 29, 1980) (one day suspension); Cleveland Electric Illuminating Co., Docket No. ER80-488, (August 22, 1980) (one day suspension).
 
 
 [6]
 This is true notwithstanding the Borough's reliance on the earlier Initial Decision in Docket No. ER77-277. That decision remains under consideration by the Commission and, in any event, will pertain to a locked-in period. Penn Power has since filed to increase both its wholesale and retail rates, thus necessitating renewed rate comparisons. We note, however, that the procedures adopted in Arkansas Power & Light Company permit the presiding judge to exercise scheduling discretion where good cause exists.
 
 
 [6]
 Professor Kenneth Culp Davis cites Arrow for the proposition that, even if an agency acts arbitrarily or in abuse of its discretion, judicial review of the suspension or the refusal to suspend newly filed rates is unavailable. K. Davis, Administrative Law Treatise Sec. 28.16 (Supp.1970) at 966
 
 
 [7]
 This is not to suggest that the reasons provided by the Commission would have been inadequate under the Conn. Light & Power standard
 
 
 [8]
 Furthermore, these rate regulation determinations are not among the structural "public law" adjudications that are so complicated that they might suggest a re-evaluation of the traditional final order rule. See Hazard, Book Review, 96 Harv.L.Rev. 758, 760 (1983)
 
 
 [9]
 This is not to imply that the refund authority of the FERC is necessarily adequate to protect completely the interests of customers in all situations. See FPC v. Hunt, 376 U.S. 515, 524-525, 84 S.Ct. 861, 866-867, 11 L.Ed.2d 878 (1964)